The ESTATE OF Nellie S. JOHNSTON, Deceased, by Robert B. PAYNE, Independent Executor, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 84–1757.

United States Court of Appeals, Fifth Circuit.

Jan. 8, 1986.

---

James A. Rolfe, U.S. Atty., U.S. Dept. of Justice, Tax Div., Dallas, Tex., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Sect., Robert A. Bernstein, Francis M. Allegra, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.

Robert B. Payne, Robert Q. Stanton, Dallas, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, POLITZ, and JONES, Circuit Judges.

**POLITZ, Circuit Judge:**

This case presents the *res nova* question whether proceeds from interests in oil and gas properties, received by a decedent's estate between the date of death and the alternate valuation date authorized by 26 U.S.C. § 2032(a), are includible in the gross estate, in whole or in part, for the purpose of determining the federal estate tax.[1] The district court held that no portion of such proceeds was includible in the gross estate. 586 F.Supp. 500 (N.D.Tex.1984). The government appeals. We reverse and remand.

## BACKGROUND

The facts are not in dispute and need only be summarized since this appeal presents solely a question of law.

Nellie S. Johnston died testate on January 27, 1974. Her will named Robert B. Payne as executor. Payne exercised the option authorized by 26 U.S.C. § 2032(a)[2] and chose to value Johnston's estate as of six months after her death rather than on the date of her death. Johnston died owning various working and royalty interests in numerous oil and gas properties, most of which were located in Texas. In the six months after her death her interests generated net income of $156,011 on which the estate paid income tax after deducting the statutory allowance for depletion. 26 U.S.C. § 611. Following an audit by the Internal Revenue Service, this entire income was included in Johnston's gross estate[3] under 26 U.S.C. § 2032(a)(1), and a

---

**1.** We have considered the valuation issue, *Estate of Frankel v. United States,* 512 F.2d 1007 (5th Cir.1975), but not the question of inclusion of any portion of the proceeds into the gross estate.

**2.** 26 U.S.C. § 2032(a) provides in pertinent part:

   (a) General. The value of the gross estate may be determined, if the executor so elects, by valuing all the property included in the gross estate as follows:

   (1) In the case of property distributed, sold, exchanged, or otherwise disposed of, within 6 months after the decedent's death such property shall be valued as of the date of distribution, sale, exchange, or other disposition.

   (2) In the case of property not distributed, sold, exchanged, or otherwise disposed of, within 6 months after the decedent's death such property shall be valued as of the date 6 months after the decedent's death....

**3.** The gross estate is defined by 26 U.S.C. § 2031(a):

   The value of the gross estate of the decedent shall be determined by including ... the value at the time of death [subject to the alternate valuation date] of all property, real or personal, tangible or intangible, wherever situated. *See* 26 U.S.C. §§ 2033–2044.

net deficiency of $278,941.59 in estate taxes was assessed.[4]

The IRS made its determination pursuant to 26 CFR § 20.2032–1(d)[5] and Rev.Rul. 71–317, 1971–72 Cum.Bull. 328, issued thereunder, in which the IRS opined that "the value of the royalty interest [in mineral-producing properties] in the gross estate at the alternate valuation date is the sum total of the in-place fair market value of the reserves ... in existence [six months] after the date of death plus the value of the included property disposed of during the interim period." The IRS also declared that "[t]he value of the included property is determined by applying an appropriate discount factor to the net proceeds (net income) from mineral production during the interim period." Rev.Rul. 71–317, 1971–72 Cum.Bull, 328, *reprinted in* 38 Oil & Gas Rptr. 711.

After paying the deficiency, the executor filed a claim for refund, which was denied. This action followed. After all other claims were settled, both parties moved for summary judgment since no genuine issue of fact existed and the matter presented

---

**4.** The bulk of the deficiency was attributed to an alleged undervaluing of the estate's oil and gas interests, not to the exclusion of the subject income. The dispute over the valuation of these assets was part of this suit but was settled. *See* 586 F.Supp. at 501. The only issue remaining is the question of the includibility of the income received during the six months post-death.

**5.** 26 CFR § 20.2032–1(d) reads in pertinent part:
"*Included property*" and "*excluded property*". If the executor elects the alternative valuation method under section [2032], all property interests existing at the date of decedent's death which form a part of his gross estate as determined under sections 2033 through 2044 are valued in accordance with the provisions of this section. Such property interests are referred to in this section as "included property". Furthermore, such property interests remain "included property" for the purpose of valuing the gross estate under the alternate valuation period by being actually ... disposed of, in whole or in part, by the estate. On the other hand, property earned or accrued (whether received or not) after the date of the decedent's death and during the alternate valuation period with respect to any

only a question of law. The district court granted the motion of the estate.

## ANALYSIS

At the threshold we note that the district court correctly concluded that federal law was applicable to this dispute. 586 F.Supp. at 503. State law is relevant to the determination of the existence of legal and equitable interests, but federal law governs "when and how [these interests] shall be taxed." *Burnet v. Harmel*, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199, 205 (1932); *Carr Staley, Inc. v. United States*, 496 F.2d 1366, *reh'g denied*, 502 F.2d 1167 (5th Cir.1974), *cert. denied*, 420 U.S. 963, 95 S.Ct. 1355, 43 L.Ed.2d 441 (1975); *see also Gilchrist's Estate v. C.I.R.*, 630 F.2d 340 (5th Cir.1980).

The Internal Revenue Code of 1954 imposes an excise tax on the transfer of an estate at death. The statutory scheme and regulations provide that the contents of a decedent's gross estate are fixed as of the moment of death. 26 CFR § 20.2032–1(a);[6] 26 U.S.C. §§ 2031–33; *see generally* Bittker, *Federal Taxation of Income, Estates and Gifts* (1984) ¶ 132.7.2. The variable

---

property interest existing at the date of the decedent's death, which does not represent a form of "included property" itself or the receipt of "included property" is excluded in valuing the gross estate under the alternate valuation method....

**6.** 26 CFR § 20.2032–1(a) provides in pertinent part:
In general, section 2032 provides for the valuation of a decedent's gross estate at a date other than the date of the decedent's death. More specifically, if an executor elects the alternate valuation method under section 2032, *the property included in the decedent's gross estate on the date of his death* is valued as of whichever of the following dates is applicable:
(1) Any property distributed, sold, exchanged, or otherwise *disposed of within 6 months* ... after the decedent's death is valued as of the date on which it is first distributed, sold, exchanged, or otherwise disposed of;
(2) Any property not distributed, sold, exchanged, or otherwise disposed of within 6 months ... after the decedent's death is valued as of the date 6 months ... after the date of the decedent's death.... (Emphasis added.)

allowed relates only to the valuation of the estate; it does not affect the inventory of assets which becomes inviolate at the death of the owner. Under the statute and regulations, assets sold continue as included property "even though they change in form." The issue before us is whether the proceeds received after Nellie Johnston's death are to be considered as in her estate at the time of her death, subsequently appearing in a changed form, or whether these proceeds are income of the estate wholly severed from taxable estate assets.

Under the government's rationale, the oil and gas payments are nothing more than a change in the form of estate assets from in-place oil and gas reserves to money. Since the in-place reserves were in the estate at Johnston's death, the payments, representing a conversion of those reserves to money, are likewise in the estate. 26 CFR § 20.2032–1(d).

The argument advanced by the estate, accepted by the district court, is based on its reading of the Supreme Court's decision in *Maass v. Higgins,* 312 U.S. 443, 61 S.Ct. 631, 85 L.Ed. 940 (1941). In *Maass* and its companion cases, the Court reviewed an IRS regulation issued under a predecessor to § 2032.[7] That regulation directed that when an estate was valued on the alternate valuation date, all rents, royalties, interest, and dividends received by the estate after the decedent's death, and not accrued prior to date of death, were to be fully included in the taxable estate. The petitioners in the *Maass* litigation challenged the inclusion in the gross estate of such rental and dividend income received between the date of the decedents' deaths and the alternate valuation dates. The Court agreed with the petitioners' arguments.

In upholding the contention of the taxpayers-petitioners in *Maass,* the Court referred to the "common understanding [that] rents, interest, and dividends are income." *Id.* at 447, 61 S.Ct. at 633. The Court expressly rejected as "unreal and

artificial" the theory behind the IRS regulation that for purposes of estate tax valuation the asset consisted of two elements, "one the right of ownership the other the right to receive the income." *Id.* Instead, the Court held that the value of an asset is to be determined by viewing all of its components, including the income stream, "as an entirety." *Id.* at 448, 61 S.Ct. at 633.

The government argues that *Maass* and its progeny are inapposite, maintaining that the contents of the estate are fixed as of the moment of the decedent's demise. This point is not in dispute. From this linchpin the government contends that, unlike the proceeds in *Maass,* the proceeds at bar are nothing more or less than a change in the form of the asset in Johnston's estate at the time of her death, from in-place oil and gas reserves to cash. Analogies to cases involving dividend income from stock or bond investments or rentals from leased property are not applicable because those proceeds would not be in the estate on the date of decedent's death. Finally, the government urges that the existence of the oil and gas depletion allowance in the income tax code, 26 U.S.C. §§ 611–17, is recognition by the Congress that revenues derived from the production of oil and gas reserves are commonly understood to be different from dividends or rental income.

We perceive *Maass* as directing a review of each case on its own facts, with an eye toward determining the common understanding whether the proceeds in question truly represent income produced by the estate or, rather, are the translation of the corpus of the estate into another form. The former would not be included in the estate tax inventory, the latter would. One might suggest that the result in *Maass* derives as much from intuition as logic. All investment income, from whatever source, represents to some extent a portion of the investment principal. As a matter of "common understanding," however, rents, dividends, and the like represent an

---

**7.** *See* 26 U.S.C. § 811(j) (1935), *quoted in Maass v. Higgins,* 312 U.S. at 444 n. 1, 61 S.Ct. at 632 n. 1.

income stream separate from the principal. The value of the principal is determined by viewing it as an "entirety," factoring in the income stream. *Maass*, 312 U.S. at 448, 61 S.Ct. at 633; 26 CFR § 20.2032–1(d)(1). This common understanding results in large measure from the apparent perception that the principal generating the dividends and rentals is not diminished by the use which produces the income. This perception of non-wasting principal is slightly fogged.[8] The tax system recognizes wasting by providing for depreciation. The critical difference, however, is that a fully depreciated building or piece of personal property generally survives its tax-depreciation lifespan and continues to provide use or an income stream, whereas a fully depleted mine or well produces nothing but storage space. Responding to the latter, Congress directly and through the IRS established what some view as the painfully complex system of depletion allowances. 26 U.S.C. §§ 611–17; 26 CFR §§ 1.611 through 0–1.617–4; *Commissioner v. Southwest Exploration Co.*, 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347 (1956); *Anderson v. Helvering*, 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277 (1940); *Murphy Oil Co. v. Burnet*, 287 U.S. 299, 53 S.Ct. 161, 77 L.Ed. 318 (1932); *see also Commissioner v. Engle*, 464 U.S. 206, 78 L.Ed.2d 420 (1984).

Applying the foregoing, we must determine which party's position is unreal and artificial and which comports with our common understanding. *Maass*. To do so we recast the arguments.

The government argues that when Nellie Johnston died she owned interests in X amount of in-place oil and gas reserves. That amount, fixed as of the moment of her death, is the property interest within the inventory of her estate for estate tax purposes. During the six months between the date of Johnston's death and the alternate valuation date, that estate was depleted by the removal of some of the reserves, identified as Y. On the alternate valuation date the amount of in-place reserves was X-minus-Y. The value which must be included in the federal estate tax is the fair market value of X, not the diminished value of X-minus-Y.

The executor argues that at Johnston's death her estate included various mineral interests from which the estate derived income generated by the production of oil and gas. Conceding that the contents of the estate are necessarily fixed as of the date of death, the executor contends that on the alternate valuation date the estate contained the exact interests, *i.e.*, mineral interests which generated income from the production and sale of oil and gas. The estate maintains that it had not sold any of the contents of the estate, it still owned the same fractional mineral interests; it had merely realized income from one of the estate's assets.

We conclude that the estate's position is artificial and that the government's position comports with common understanding.[9] Under the theory advanced by

---

**8.** It cannot be gainsaid that a building held for rent is "used up" in some physical sense in return for the rental payment. Regardless of the accuracy of the forecast of the economic life of a structure, at some point that life ends.

**9.** We note that Texas treats oil and gas payments as returns of principal and considers oil and gas in place as a part of the realty. *Clyde v. Hamilton*, 414 S.W.2d 434 (Tex.1967); *Keasler v. Natural Gas Pipeline Co.*, 569 F.Supp. 1180 (E.D. Tex.1983), *aff'd*, 741 F.2d 1380 (5th Cir.1984). The same rule is recognized in many mineral-producing states. *Ohio Oil Co. v. Indiana*, 177 U.S. 190, 20 S.Ct. 576, 44 L.Ed. 729 (1900); *Bodcaw Lumber Co. v. Goode*, 160 Ark. 48, 254 S.W. 345 (1923); *Southern P.R. Co. v. S.F. Sav.*

*Union*, 146 Cal. 290, 79 P. 961 (1905); *Ohio Oil Co. v. Daughetee*, 240 Ill. 361, 88 N.E. 818 (1909); *Anderson v. Beech Aircraft Corp.*, 237 Kan. 336, 699 P.2d 1023 (1985); *Gerkins v. Kentucky Salt Co.*, 100 Ky. 734, 39 S.W. 444 (1897); *Federal Land Bank of N.O. v. Mulhern*, 180 La. 627, 157 So. 370 (1934); *Attorney General v. Pere Marquette R. Co.*, 263 Mich. 431, 248 N.W. 860 (1933); *Whelan v. Johnson*, 192 Miss. 673, 6 So.2d 300 (1942); *Gas Products Co. v. Rankin*, 63 Mont. 372, 207 P. 993 (1922); *Wheelock v. Heath*, 201 Neb. 835, 272 N.W.2d 768 (1978); *Bolack v. Underwood*, 340 F.2d 816 (10th Cir. 1965) (New Mexico); *Schank v. North American Royalties, Inc.*, 201 N.W.2d 419 (N.D.1972); *Nonamaker v. Amos*, 73 Ohio St. 163, 76 N.E. 949 (1905); *Cox v. Lasley*, 639 P.2d 1219 (Okl.1981);

the estate, if one died possessed of $10,-000,000 in oil and gas reserves and, during the ensuing six months, the entirety was produced so that on the alternate valuation date there were no reserves whatever, there would be no federal estate tax. We cannot give the statute or regulations that anomalous interpretation. The quantity of the reserves are determined as of the date of the decedent's death; only the value to be assigned to that quantity of reserves may be changed by market variances when severed before the alternate valuation date.

The estate makes additional arguments that merit some discussion. It urges that acceptance of the government's position would defeat the legislative purpose behind § 2032. The district court accepted this argument. 586 F.Supp. at 507. We do not. The alternate valuation date was not enacted to permit an estate to reduce its tax liability by disposing of estate assets. The purpose behind § 2032 is neither elusive nor uncertain. The statute was designed to mitigate the hardship resulting when the value of a decedent's assets between the date of death and the date the estate tax became due was significantly reduced. *Maass.* The *raison d'etre* of § 2032 does not suffer by our decision today; it remains to protect estates with oil and gas interests when the value of those interests declines during the six-month grace period. In the not-too-distant past that likelihood was considered remote. Not so today, considering the volatile forces extant in the world oil and gas industry.

Finally, the estate argues that the inclusion of the interim proceeds in the gross estate would result in double taxation because the estate paid income tax on the proceeds. We are not persuaded. The estate tax is due on the assets in the decedent's estate, based on the fair market value of those assets on the applicable evaluation date. If those assets produce income, as defined by the Congress, income tax is due thereon. This "double taxation" is valid.

Changing the facts in the case at bar slightly illuminates this conclusion. Had the entirety of the reserves remained in place for more than six months after Johnston's death, the estate tax would have been based on the value of the entirety of the reserves. No one would dispute that statement. Thereafter, as the oil and gas was produced the applicable income tax provisions would apply. This "double taxation" is envisioned by the tax code and is not rendered illegal by *Maass.* In *Maass* there was no basis for double taxation since the proceeds were held to be only income and not part of the taxable estate. Here the proceeds represent both estate assets and income and may be taxed as both. *Bull v. United States,* 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). The *Maass* Court recognized that possibility by observing that "[i]n the appraisal of a decedent's estate, rent or interest accrued to the date of death is properly treated as a capital asset." 312 U.S. at 448, 61 S.Ct. at 633. As rent or interest, the prior accruals would be subject to the income tax. As a capital asset, those accruals would be subject to the estate tax.

This leads then to the final question necessary to the resolution of this appeal: What portion of the proceeds are to be included in the gross estate? Appraising oil and gas interests presents unique problems. In partial response thereto Rev.Rul. 71–317, 1971–72 Cum.Bull. 328 was issued. Therein the IRS determined that the amount to be included in the gross estate in situations such as here presented is the amount of the proceeds minus "an appropriate discount factor." [10] We find this approach inadequate, considering the complexities of evaluating oil and gas interests, and the language of 26 U.S.C. § 2032(a)(1).

---

*U.S. Steel Corp. v. Hoge,* 468 A.2d 1380 (Penn. 1983); *Murray v. Allard,* 100 Tenn. 100, 43 S.W. 355 (1897); *Consolidated Gas Supply Corp. v. Riley,* 161 W.Va. 782, 247 S.E.2d 712 (1978); *Ready v. Texaco, Inc.,* 410 P.2d 983 (Wyo.1966).

10. No "appropriate discount factor" was subtracted in the Johnston audit. The IRS concedes error. Because of our disposition we do not consider what is an appropriate discount factor.

We are persuaded, and now hold, that the appropriate value to be assigned to oil and gas produced during the interim period, for inclusion in the gross estate, is the in-place value of that oil and gas on the date of its severance. The Johnston inventory included interests in oil and gas reserves. The value for estate tax purposes is the value of those reserves in place. In accordance with § 2032(a)(1), if the alternate valuation date is chosen the estate includes the in-place value of the reserves remaining on the alternate valuation date, valued as of that date, together with the in-place value of all oil and gas produced during the intervening six months, valued as of the dates of severance. Valuation of oil and gas reserves, both as to quantity and value, albeit complex, is a matter routinely done for myriad reasons, business, finance, inheritance, divorce, contract litigation, and taxes, to name a few. It is a matter within the competence of the experts. It readily may be done here.

On the present record it is not possible to determine the in-place value of the oil and gas produced as of the dates of severance. The case must be remanded for the development of evidence reflecting those values, which are then to be included in the inventory for estate tax purposes, together with the reserves remaining on the alternate valuation date.

The judgment of the district court is REVERSED and the matter is REMANDED for further proceedings consistent herewith.