**ESTATE OF F.G. HOLL, Deceased and Bank IV Wichita, N.A., Executor, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent– Appellee.**

**No. 91–9003.**

United States Court of Appeals, Tenth Circuit.

June 17, 1992.

Jack D. Flesher of Bever, Dye, Mustard & Belin, Wichita, Kan., for petitioner-appellant.

Charles Bricken, Tax Div., Dept. of Justice, Washington, D.C. (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, and Ann B. Durney, on the briefs), for respondent-appellee.

Before HOLLOWAY, Circuit Judge, MCWILLIAMS, Circuit Judge, and CAUTHRON, District Judge [1].

CAUTHRON, District Judge:

F.G. Holl died on December 21, 1985 (Doc. 7, Stip. ¶ 2). At the time of his death, he had substantial oil and gas holdings in producing oil and gas properties. His executor timely filed a federal estate tax return in which the mineral interests were valued at nearly $9,000,000 as of the date of death. Using the alternative valuation date of June 21, 1986, the assets were valued at approximately $3,100,000 (Doc. 7, Stip. ¶ 3; Jt.Exh. 1–A, Sch. F1, item 1). As presented to the trial court, between the date of death and the alternative valuation date, the Estate received $980,698.47 in net income from the sale of oil and gas (Doc. 7, Stip. ¶ 18). The Estate gave an in-place

---

1. Honorable Robin J. Cauthron, United States District Judge for the Western District of Oklahoma, sitting by designation.

value to this oil and gas of $686,488.93 (Jt.Ex. 1–A at 57, Sch. F1, item 2). The executor elected to value the assets as of the alternative valuation date under § 2032 of the Internal Revenue Code (26 U.S.C. § 2032 (1954)) (Jt.Ex. 1–A, ¶ 2, 1) making the total net estate tax due $4,202,764.84 (Jt.Exh. 1–A at 1, ¶ 19).

The Commissioner of Internal Revenue Service (IRS) proposed additional taxes against the Estate. Following the receipt of the statutory notice of deficiency, in which the Commissioner proposed the assessment of $6,211.86 in additional estate taxes, the Estate filed a petition in the Tax Court seeking a redetermination of the deficiency. The parties agreed to certain adjustments and the remaining dispute was tried on May 14, 1990 (Doc. 1, at 1). From the Tax Court's Order entered February 12, 1991, 95 T.C. 566, in which the value of the oil and gas sold by the Estate between the date of death and the alternative valuation date was found to be $930,839.76, the Estate timely filed this appeal.

 Findings of fact made by the United States Tax Court are reviewed by a clearly erroneous standard. *Commissioner v. Duberstein,* 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); *National Collegiate Athletic Ass'n v. Commissioner,* 914 F.2d 1417 (10th Cir.1990). Applying this test, a factual finding is said to be clearly erroneous when the reviewing court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). If on appeal the court is asked to reconsider a question of law, the applicable standard is a *de novo* review. *Helvering v. Tex–Penn Oil Co.,* 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755 (1937). The Estate challenges questions of both fact and law.

At a hearing on the value of the assets, Mr. Fair, the Estate's expert, testified that prior to extraction, the oil and gas which was sold had an in-place fair market value

of $686,488.93. Through further analysis, this figure was reduced to $683,306. In contrast, the IRS's expert, Mr. Pilcher, determined the in-place value of the minerals sold by the Estate between the date of death and the alternative valuation date to be $930,839.76. The Tax Court rejected the Fair analysis and found the in-place value of the oil and gas between the date of death and the alternative valuation date to be that figure advanced by the IRS's expert.

On appeal, the Estate argued case law applying § 2032 requires property to be valued as it existed at the date of death and changes in its character or condition must be disregarded. Because the Tax Court adopted a value primarily reflecting its sales price, the Estate asks this court to find that factual determination to be clearly erroneous as it does not reflect the willing-buyer/willing-seller standard. In addition, the Estate challenges the Tax Court's finding that "the parties agree that the *proceeds* derived from oil and gas reserves produced and sold between the date of decedent's death and the alternate valuation date are "included property." Tax Court opinion at 9 (emphasis added). The Estate says that what "the parties did agree to was that 'the *value* of the oil and gas sold (during that period) should be included in the gross estate under I.R.C. § 2032." Brief of Appellant at 36 (emphasis added). The Estate argues that the Tax Court's treatment does not follow the principles set forth in the case of *Herbert H. Maass v. Higgins,* 312 U.S. 443, 61 S.Ct. 631, 85 L.Ed. 940 (1921). Characterizing the proceeds as "included property," as that term is used in the Tax Code, the Tax Court subtracted the operating expenses and interest from the proceeds of the sale of oil and gas. The Estate argues this method perpetuates the error which began with the erroneous valuation. As an additional error, the Estate disagreed with the Tax Court's employment of a method which identified some oil and gas as having a greater value rather than recognizing it as indistinguishable.

In *Flanders v. U.S.*, 347 F.Supp. 95 (N.D.Cal.1972), it was held that the value of the asset must recognize its condition as of the date of death or its "pre-change value." Involved in *Flanders* was the value of an undivided one-half interest in a 650–acre cattle ranch held in a revocable trust. At the date of death, the fair market value of the decedent's interest was $220,000. Before the alternative valuation date, the Trustee entered into a conservation agreement which reduced the asset's fair market value by 88%. Consequently, the decedent's interest had a value of $30,000. An election was made to use the alternative valuation date and a federal estate tax return was filed which reflected the asset's value to be $25,000. The IRS sought over $66,000 in a deficiency plus interest. After the Trustee paid the amount claimed, it brought an action for a refund. It was the position of the government that the "self-imposed, value depressing, land use restriction" should be ignored and the property should be "valued as it existed at the date of death." *Id.*, at 97. It was the Trustee's position that legislative history showed an intent to consider the character of the property to be valued "as it existed on the date of death although it could be *'valued'* at market conditions existing at the elected valuation date." *Flanders*, at 98. The *Flanders* opinion also acknowledged the existence of legislative history that Congress intended "voluntary post mortem changes in the property were not considered except if they resulted in a sale or other disposition between the date of death and the alternate valuation date. In these instances, the valuation date was set as of the date of such sale or other disposition." An interpretive regulation to 26 U.S.C. § 2032 stated "the property to be valued ... is the property included in the gross estate on the date of death. As property and its value are separate and distinct, the former denoting legal rights, the latter the monetary measure of such rights, and as subdivision (j) [26 U.S.C. § 811(j)] treats the two separately, it will be necessary in every case first to determine what *property* constituted the gross estate at decedent's death." (Art. 11 of Regulations 80 (1937 Ed.), as cited in *Flanders*, at 98). Originally the income received between the date of death and the alternative valuation date would have been included in the gross estate but the Supreme Court in *Maass v. Higgins*, 312 U.S. 443, 61 S.Ct. 631, 85 L.Ed. 940 (1941), now prohibits that result. *See also Johnston v. U.S.*, 779 F.2d 1123 (5th Cir.1986), which holds the asset must be valued at the time it was severed.

■ On the date of death, the character of the relevant "property" must be described as *unextracted* minerals. The Tax Court did not apply an analysis that valued this asset in its pre-change condition (before it was severed) and in effect imposed an improper tax on the income derived from this asset between the date of death and the alternative valuation date. Thus, we hold that the Tax Court erred in its application of the law and in accepting an erroneous method of valuation by the Commissioner's expert focusing on "the actual sales price as of the date of sale in his valuation." Tax Court Opinion at 19. We hold instead that the Tax Court on remand should consider evidence premised on a method of valuation starting with the pre-change value of the reserves reduced to possession and sold during the interim period from the date of death to the alternate valuation date. While the Estate's evidence generally following such an approach is persuasive, as a reviewing court we do not make a determination that this evidence of the Estate on this record must be accepted. On remand, the Tax Court should reconsider the valuation issue concerning the reserves produced and sold during the interim period "to determine the in-place value of the oil and gas produced as of the dates of severance" and evidence showing an "appropriate discount factor" to be applied. *Estate of Johnston*, 779 F.2d at 1129–29 and n. 10, in accord with 26 U.S.C. § 2032 and 26 C.F.R. § 20.2032–1. To accomplish this on remand, the Tax

Court may choose to reconsider the present record, or it may have further proceedings allowing the parties to present additional evidence; the Court should then make its new findings and decision.

The decision of the Tax Court is RE-VERSED and the cause is REMANDED for further proceedings in accord with this opinion.