**ESTATE OF F.G. HOLL, Deceased, Bank IV Wichita, N.A., Executor, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent– Appellee.**

No. 94–9005.

United States Court of Appeals, Tenth Circuit.

May 5, 1995.

Jack D. Flesher of Bever, Dye, Mustard & Belin, Wichita, KS, for plaintiff-appellant.

Charles Bricken, Tax Div. of the Dept. of Justice, Washington, DC (Loretta C. Argrett, Asst. Atty. Gen., and Ann B. Durney, Tax Div., with him on the brief), for defendant-appellee.

Before MOORE and BRORBY, Circuit Judges, and ALSOP, District Judge.*

ALSOP, Senior District Judge.

The Estate of F.G. Holl ("Holl") appeals from the Tax Court's determination of the in-place value of oil and gas reserves extracted between the date of death and the alternate valuation date for estate tax purposes. We reverse and remand.

I.

F.G. Holl ("Holl") died on December 21, 1985, at which time he held numerous lease-hold and mineral interests in producing oil and gas properties in Wichita, Kansas. Holl's Executor filed a federal estate tax return on March 26, 1987. The Estate received $980,698.47 in net income from the production and sale of oil and gas between the date of death and the alternate valuation date. 26 U.S.C. § 2032. The Estate reported the in-place value of the oil and gas sold within that time frame as $686,488.93.

The Commissioner of the Internal Revenue Service ("Commissioner"), however, determined in a notice of deficiency that the in-place value of the oil and gas sold by the Estate between the date of death and the alternate valuation date was $930,839.76. The Estate filed a petition in the Tax Court seeking a redetermination of the deficiency. The parties agreed to certain adjustments and the remaining dispute was tried on May 14, 1990 to determine the in-place value of

* The Honorable Donald D. Alsop, Senior United States District Judge for the District of Minneso-ta, sitting by designation.

**650**

the minerals sold between the date of death and the alternate valuation date.

At the trial, F. Doyle Fair ("Fair"), the Estate's expert, testified that prior to extraction, the minerals sold had an in-place fair market value of $686,488.93. This figure was eventually reduced to $683,306. The Commissioner's expert, Von B. Pilcher ("Pilcher"), determined the in-place value of the minerals sold by the Estate between the date of death and the alternate valuation date to be $930,839.76. The Tax Court rejected Fair's analysis and held that the in-place value of the reserves was $930,839.76, after which the Estate appealed.

This Court reversed and remanded. *See Holl v. Commissioner,* 967 F.2d 1437 (10th Cir.1992). The Tax Court held further proceedings on remand, but once again rejected the Estate's experts' testimony and instead adopted Pilcher's, holding that the in-place value of the reserves sold between the date of death and the alternate valuation date was $869,605.53. This appeal followed.

## II.

Findings of fact made by the United States Tax Court are reviewed by a clearly erroneous standard. *Commissioner v. Duberstein,* 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); *National Collegiate Athletic Ass'n v. Commissioner,* 914 F.2d 1417 (10th Cir.1990). Applying this test, a factual finding is clearly erroneous when the reviewing court "on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Questions of law are subject to a de novo standard of review. *Helvering v. Tex–Penn Oil Co.,* 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755 (1937). We review mixed questions under the clearly erroneous or de novo standard, depending on whether the mixed question involves primarily a factual inquiry or the consideration of legal principles. *Armstrong v. Commissioner,* 15 F.3d 970, 973 (10th Cir.1994). Both questions of law and fact are involved in this case, but we find that it primarily involves a factual inquiry. Ac-

cordingly, clearly erroneous review is appropriate.

It is undisputed that the oil and gas produced during the interim period should be included in the gross estate at its in-place value on the date of its severance. *See Holl,* 967 F.2d at 1439; *Johnston v. United States,* 779 F.2d 1123, 1128 (5th Cir.), *cert. denied,* 477 U.S. 904, 106 S.Ct. 3273, 91 L.Ed.2d 564 (1986). The sole disputed issue currently before us is whether the Tax Court correctly determined the in-place value of the oil and gas produced between Holl's date of death and the alternate valuation date for inclusion in Holl's estate pursuant to § 2032(a)(1) of the Internal Revenue Code. 26 U.S.C. § 2032(a)(1) (1954).

In *Holl v. Commissioner,* we determined that the Tax Court had erred at the first trial in "accepting an erroneous method of valuation by the Commissioner's expert focusing on 'the actual sales price as of the date of sale in his valuation[,]'" as opposed to the in-place value of the unextracted minerals. *Holl,* 967 F.2d at 1439. We reversed and remanded to the Tax Court, relying upon *Johnston v. United States,* in which the Fifth Circuit rejected the Commissioner's argument that the amount to be included in the Estate is "the amount of the proceeds minus an appropriate discount factor." *Johnston,* 779 F.2d at 1128.

We instructed the Tax Court on remand to "consider evidence premised on a method of valuation starting with the pre-change value of the reserves reduced to possession and sold during the interim period from the date of death to the alternate valuation date." *Holl,* 967 F.2d at 1439. We indicated that the Estate's evidence "generally following such an approach [was] persuasive." *Id.* We further indicated that on remand, "the Tax Court should reconsider the valuation issue concerning the reserves produced and sold during the interim period 'to determine the in-place value of the oil and gas produced as of the dates of severance' and evidence showing an 'appropriate discount factor' to be applied." *Id.* (quoting *Johnston,* 779 F.2d at 1129).

The Tax Court held a second trial on remand. Fair, who testified for the Estate,

determined the in-place value of the minerals sold by the Estate between the date of death and the alternate valuation date to be $583,765. Pilcher testified for the Commissioner and arrived at an in-place value of $869,605. The Tax Court rejected the Estate's evidence and instead adopted the valuation method advocated by Pilcher. In adopting Pilcher's method, the Tax Court reasoned that Pilcher was "the only expert in the second trial who both (1) considered the time value of the money and thus attributed a reasonable amount of the Estate's receipts for the extracted minerals to income earned over the 6–month period and (2) used a reasonable adjustment for uncertainty." *See* Tax Court Order at 10.

The Estate now contends that the Tax Court failed to follow our mandate in *Holl v. Commissioner*, 967 F.2d at 1437. According to the Estate, in adopting Pilcher's valuation method, the Tax Court again employed a valuation method based on "the actual sales price as of the date of sale," rather than a method based on the in-place value of the oil and gas on the date of severance. *Id.* at 1439. The Estate contends that Fair was the only expert at the second trial who determined the in-place value of the minerals as of the date of severance and who avoided valuation based on net cash flow or actual sales. We agree with the Estate.

▄ Fair determined the quantity of oil and gas in the reserves and apportioned it, on a pro rata basis, to quantities produced during the interim period. To assign an in-place value (at the time of severance from the ground) to the quantities produced, he determined the market value of the reserves on sixteen dates during the interim period. In contrast, Pilcher reduced the net income derived from the oil and gas during the interim period by a present value interest factor and by a risk factor. Pilcher's approach improperly focuses on the actual sales price instead of the in-place value of the unextracted minerals. *Holl,* 967 F.2d at 1439.

The Tax Court criticized Fair's valuation of the reserves as of the date of severance for the same reasons it rejected Fair's method after the first trial. According to the Tax Court, in valuing reserves as of the date of severance, Fair failed to use a reasonable adjustment for the uncertainty of the market price of oil and gas. We find the Tax Court's criticism of Fair's failure to apply an "appropriate discount factor" to be misplaced. *See Holl,* 967 F.2d at 1439.

In *Holl,* we directed the Tax Court " 'to determine the in-place value of the oil and gas produced as of the dates of severance' and evidence showing an 'appropriate discount factor' to be applied." *Id.* The discount factors applied by Pilcher, however, focus on the value of *extracted* oil and gas in commercially saleable quantities, based on cash-flow during a short-term period. Just as valuation based on net sales or cash flow is erroneous because it fails to account adequately for the in-place value of *unextracted* minerals, a discount factor based on the value of *extracted* minerals is similarly problematic. Fair's method, on the other hand, focuses on the value of the unextracted minerals, minus anticipated income to be derived from the reserves. Exclusion of income is mandated by *Maass v. Higgins,* 312 U.S. 443, 61 S.Ct. 631, 85 L.Ed. 940 (1941) and is an appropriate discount factor in this case.

For these reasons, we find that the Tax Court's rejection of Fair's valuation method is erroneous, as is its adoption of Pilcher's valuation method. On remand, therefore, the Tax Court is instructed to adopt Fair's methodology, conduct appropriate computations pursuant to Tax Court Rule 155, and to enter judgment in favor of the Estate.

Accordingly, the decision of the Tax Court is **REVERSED** and the cause of action is **REMANDED** for further proceedings in accord with this opinion.