**Filed 10/10/96**

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

JEFF WANAMAKER,

        Plaintiff - Appellee,

        v.

DONALD H. ALBRECHT and JO ANNE
ALBRECHT,

        Defendants - Appellants.

No. 95-8061

D. Wyoming

(D.C. No. 94-CV-100B)

---

## ORDER AND JUDGMENT[*]

---

Before **ANDERSON**, **KELLY**, and **LUCERO**, Circuit Judges.

---

Donald H. Albrecht and Jo Anne Albrecht ("the Albrechts") appeal from an order

of the district court granting summary judgment dismissing their counterclaims for fraud,

rescission, and reformation. The district court ruled that the doctrine of election of

remedies and general principles of estoppel barred the counterclaims. Because we

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

conclude that the counterclaims are barred by well-established principles of res judicata and collateral estoppel, we affirm.

**BACKGROUND**

In 1990, Wanamaker sued the Albrechts in Los Angeles Superior Court over a tangled web of transactions. Shortly before the cause went to trial, the parties executed an extensive settlement agreement, which resolved the issues in the Los Angeles suit, as well as the issues in a separate Wyoming suit. Pursuant to the agreement, the Los Angeles and Wyoming actions were dismissed.

Among other things, the settlement agreement obligated the Albrechts to execute a $3.5 million note in Wanamaker's favor. The Albrechts were to begin installment payments on the note in September of 1990, with payments continuing until May of 1997. The agreement connected payment of the note to ownership of a certain parcel of Wyoming real estate owned by Wanamaker. If the Albrechts made timely payments on the note through December 31, 1993, then Wanamaker would convey the Wyoming property to the Albrechts. Wanamaker would receive a mortgage on the property equal to the principal amount still outstanding on the note. However, in the event the Albrechts defaulted on the note prior to December 31, 1993, Wanamaker would retain the Wyoming property, and the Albrechts would "forfeit all right to . . . reacquire title" to the property.

The Albrechts made only four payments on the note, with the last made by check dated January 2, 1991. The four payments totaled around $300,000. Wanamaker gave the Albrechts notice of default, but they made no further payments.

Wanamaker then brought a second suit against the Albrechts in Los Angeles Superior Court, this time for the amount due on the note. The Albrechts answered the complaint, asserting twenty-five affirmative defenses, including fraud, mistake, and mutual mistake. The Albrechts did not file a cross-complaint.

Wanamaker moved for summary judgment on the note. In their opposition papers, the Albrechts argued that the terms of the settlement agreement did not permit Wanamaker to both retain the Wyoming property and sue for the unpaid note balance. In the event of default, the Albrechts contended, Wanamaker's sole remedy was to retain the Wyoming land. They urged that this result was compelled not only by the terms of the settlement agreement, but by California's anti-deficiency statute, which generally prohibits a vendor from obtaining a deficiency judgment against a purchaser who fails to complete a land sale contract.

The Albrechts also argued that Wanamaker had breached separate provisions of the settlement agreement by denying the Albrechts access to the Wyoming property. They claimed that a triable issue of fact existed as to whether this alleged breach by Wanamaker should prevent him from enforcing the note. The Albrechts did not,

however, present any facts or arguments in support of their affirmative defenses of fraud, mistake, and mutual mistake.

The superior court granted summary judgment in Wanamaker's favor, finding that the anti-deficiency statute did not apply because the note did not arise from a land sale contract, but rather was an integral part of a settlement agreement. Furthermore, the court determined that the terms of the settlement agreement did not limit Wanamaker merely to retaining the property. The Albrechts' motion for reconsideration was denied, and judgment was entered against them for $4,077,175.74, plus interest.

The Albrechts challenged the superior court judgment in almost every conceivable way. First, they appealed to the California Court of Appeal. In its opinion affirming the judgment, the Court of Appeal explicitly rejected the Albrechts argument that Wanamaker could not keep the property and collect on the note:

> Finally, the antideficiency statute should not be applied in this case because it would be unreasonable to do so. If [Wanamaker] could not sue on the note, he would have no remedy for the bargained for exchange requiring him to forego his claims in the prior litigation. . . . The structure of the settlement agreement demonstrates that in the event of default, [Wanamaker] was not to be limited to simply keeping property which he already owned.

R. Vol. One at Tab 11 (attach. to Pl.'s Reply to Countercl.).

The Albrechts sought a rehearing, which was denied. They sought review in the California Supreme Court, but were denied. They requested a writ of mandate from the California Supreme Court. Again, denied. The California judgment is final. At all times,

and at every level, the Albrechts repeated their failed argument that Wanamaker should not be allowed to keep the Wyoming property and collect on the note.

On January 10, 1994, Wanamaker filed a complaint against the Albrechts in Wyoming state court, seeking to execute his California judgment. He sought a judgment lien against certain property located in Wyoming in which he believed the Albrechts might have an interest.[1] The Albrechts removed the case to federal court. It happened that the Albrechts did not have an attachable interest in the property, so Wanamaker voluntarily dismissed his complaint. Unfortunately for Wanamaker, his dismissal did not occur until after the Albrechts had asserted six counterclaims.

The Albrechts' first, second and third counterclaims all sought, in one way or another, to relitigate the double recovery argument rejected by the California courts. The district court granted summary judgment against these counterclaims on principles of res judicata and collateral estoppel. R. Vol. Five at Tab 52. The Albrechts do not appeal from this judgment.

The Albrechts' fourth, fifth and sixth counterclaims attacked for the first time the validity of the entire settlement agreement entered into in 1990. The fourth counterclaim sought rescission of the settlement agreement on the grounds of unilateral or mutual mistake of law or fact. In short, the Albrechts alleged that, at the time of execution, it was not the understanding of the parties that the agreement would allow Wanamaker to

---

[1]This property is not the Wyoming property involved in the settlement agreement.

keep the property and collect on the note in the event of default by the Albrechts. The fifth counterclaim sought reformation of the agreement for the same reason. The sixth counterclaim sought damages for fraud, which the Albrechts alleged consisted of Wanamaker intentionally misleading them into believing, at the time they executed the settlement agreement, that the agreement would in no way permit Wanamaker to keep the property and still sue on the note.

The district court denied Wanamaker's initial motion for summary judgment on the fourth, fifth, and sixth counterclaims, but granted a second motion. R. Vol. Seven at Tabs 75, 76. The district court applied the doctrine of election of remedies "by analogy, with an eye on general principles of estoppel." The district court determined that the Albrechts had "fought mightily" in the California courts to establish their own interpretation of the settlement agreement. Since the Albrechts sought protection from the terms of the agreement in the California courts, the district court concluded that it would be inequitable to now allow them to argue that this same agreement was so poisoned by fraud or mistake that it should be rescinded or reformed:

> This Court's concept of equity, estoppel and judicial economy prohibits a party from attempting to gain the judicial enforcement or protection of a contract by seeking its affirmance, only to claim that the contract is unenforceable once the court has issued a ruling adverse to that parties' position.

R. Vol. Seven, Tab 75 at 9.

The Albrechts appeal from the order granting summary judgment against their fourth, fifth, and sixth counterclaims.

**DISCUSSION**

We review a grant of summary judgment de novo applying the same legal standard used by the district court pursuant to Fed. R. Civ. P. 56(c). Wolf v. Prudential Ins. Co., 50 F.3d 793, 796 (10th Cir. 1995). We consider questions of law de novo, and may affirm the district court on any legal ground supported by the record. Estate of Holl v. Comm'r, 967 F.2d 1437, 1438 (10th Cir. 1992); Jetcraft Corp. v. Flight Safety Int'l, 16 F.3d 362, 364 (10th Cir. 1993). The district court's interpretation of state law and the preclusive effect of prior judgments are both questions of law. Horowitz v. Schneider Nat'l, Inc., 992 F.2d 279, 281 (10th Cir. 1993) (state law); United States v. Lacey, 982 F.2d 410, 411 (10th Cir. 1992) (preclusion).

The federal courts must give preclusive effect to state court judgments whenever the state court that granted the judgment would do so. Allen v. McCurry, 449 U.S. 90, 95-96 (1980) (citing 28 U.S.C. § 1738); see also Kiowa Tribe of Oklahoma v. Lewis, 777 F.2d 587, 590 (10th Cir. 1985), cert denied, 479 U.S. 872 (1986). Because there is a final California judgment relating to the settlement agreement between the Albrechts and Wanamaker, we will apply the California law of res judicata and, more specifically,

collateral estoppel to determine whether Albrechts' counterclaims for rescission, reformation, and fraud should be precluded.

Res judicata precludes parties from relitigating a cause of action that has been finally determined by a court of competent jurisdiction. Warga v. Cooper, 51 Cal. Rptr. 2d 684, 688 (Cal. Ct. App. 1996). Any issue necessarily decided in such litigation is conclusively determined as to the parties if it is involved in a subsequent lawsuit on a different cause of action. Id.[2] Collateral estoppel applies if (1) the issue necessarily decided at the previous trial is identical to the one which is sought to be relitigated; (2) the previous trial resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior trial. People v. Santamaria, 884 P.2d 81, 87 (Cal. 1994).

The California Supreme Court has stated that the purposes of collateral estoppel are to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, and to provide repose by preventing a person from being harassed by vexatious litigation. Id. at

---

[2]As is common, the California courts often use the general label of res judicata to describe both the claim-preclusive and issue-preclusive effects of a prior judgment. At other times, the term collateral estoppel is used to specifically describe the issue-preclusive effect. While the label makes no difference, we note for purposes of clarity that the terms res judicata and collateral estoppel are used interchangeably in many of the cited decisions.

85. Collateral estoppel should be applied only where it will advance these purposes.

Gikas v. Zolin, 863 P.2d 745, 750 (Cal. 1993).

Because there is no question that the Albrechts and Wanamaker were parties to the California superior court action which resulted in a final judgment on the merits, we must determine which issues were decided by that action. The rule is established:

> Next is the question, under what circumstances is a matter to be deemed decided by the prior judgment? Obviously, if it is actually raised by proper pleadings and treated as an issue in the cause, it is conclusively determined by the first judgment. But the rule goes further. If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is res judicata on matters which were raised or could have been raised, on matters litigated or litigable.

Warga, 51 Cal. Rptr. 2d at 688 (quoting Sutphin v. Speik, 99 P.2d 652, 655 (Cal. 1940)). Therefore, an issue may not be litigated piecemeal. Warga, 51 Cal. Rptr. 2d at 688. If an issue has been determined in the former action, it is binding despite the fact that the parties may have failed to urge for or against it matters which, if urged, would have produced a different result. Id.

In California, it is well settled that new matter set forth in the answer by way of defense is automatically deemed denied, and in the absence of proof must be deemed untrue. Cal. Civ. Proc. Code § 431.20 (West 1996); Calzada v. Sinclair, 86 Cal. Rptr. 387, 396 (Cal. Ct. App. 1970); Tustin Packing Co. v. Pacific Coast Fruit Auction Co.,

131 P. 338 (Cal. Ct. App. 1913). The pleadings define the issues for summary judgment. Henry v. Clifford, 38 Cal. Rptr. 2d 116, 119 (Cal. Ct. App. 1995). Therefore, if a defendant fails to present evidence in support of a formally pleaded defense, there is nothing before the court from which it could determine that the defense presents a genuine question, and upon judgment it is conclusively presumed that the court found against the defendant with respect to the defense. Univ. of S. California v. Weiss, 25 Cal. Rptr. 475, 481 (Cal. Ct. App. 1962), Pacific Inv. Co. v. Ross, 63 P. 67, 68 (Cal. 1900). Furthermore, because the rejection of such affirmative defenses is necessarily implied by the judgment, it is not necessary for the court to make specific findings thereon. Calzada, 86 Cal. Rptr. at 396 (where defense of laches was deemed adjudicated by necessary inference).

The Albrechts formally pleaded in the superior court the defenses of fraud, mistake, and mutual mistake of law or fact. These defenses were automatically deemed denied by Wanamaker. Wanamaker was not required to negate such defenses in his affidavits in support of summary judgment. Weiss, 25 Cal. Rptr. at 481. Rather, the Albrechts were under a duty to support such defenses or forever lose the right to urge them. Yet, the Albrechts presented no evidence or arguments whatsoever in support of these defenses. Therefore, they are now met with the conclusive presumption that these issues were decided against them by the court. In short, the judgment of the California

superior court conclusively decided by necessary inference that there was no fraud, mistake or mutual mistake.

The fact that the Albrechts now seek to raise these same issues under a different and affirmative prayer for relief is irrelevant. "[T]hat different forms of relief are sought in the two lawsuits is irrelevant, for if the rule were otherwise, 'litigation finally would end only when a party ran out of counsel whose knowledge and imagination could conceive of different theories of relief based upon the same factual background.'" Interinsurance Exch. of the Auto. Club of S. California v. Superior Court, 257 Cal. Rptr. 37, 39 (Cal. Ct. App. 1989) (quoting Kronkright v. Gardner, 107 Cal. Rptr. 270, 272 (Cal. Ct. App. 1973)). Similarly, it is unavailing that the Albrechts might now wish to advance a specific theory of fraud or mistake that was not advanced in the prior action. As previously mentioned, collateral estoppel bars "matters which were raised or could have been raised." Warga, 51 Cal. Rptr. at 688. Thus, the doctrine applies to "issues litigated even though some factual matters or legal arguments which could have been raised were not." Lucas v. County of Los Angeles, 54 Cal. Rptr. 2d 655, 662 (Cal. Ct. App. 1996).

To avoid this result, the Albrechts argue that the California answer and affirmative defenses were prepared by a junior associate who was not fully educated in the facts of the dispute. Apparently, we are to imply from this argument that when the Albrechts pled fraud and mistake they did not really mean it. In a somewhat connected argument, the Albrechts claim that they themselves did not know of the facts supporting fraud or

mistake until after they had filed their answer. They argue that only when they discovered, prior to summary judgment, that Wanamaker intended to both keep the property and collect on the note did they realize they had entered the settlement agreement by fraud or mistake.

We reject these arguments. While counsel often plead vast numbers of affirmative defenses without being sure whether the facts will ultimately support the defenses, such pleading is done precisely so that the defenses will be preserved should discovery or further proceedings reveal factual support. That is what happened here. The Albrechts knew, at least upon receiving Wanamaker's papers in support of summary judgment, that Wanamaker intended to collect on the note and keep the Wyoming property. Although the Albrechts' response to Wanamaker's motion was largely devoted to arguing why Wanamaker could not have this "double recovery," it did not even mention the defenses of fraud or mistake. There is no reason why the Albrechts could not have urged their defenses of fraud and mistake prior to the entry of summary judgment. As Mr. Cairl, counsel for the Albrechts, admitted in his deposition, the theory for a fraud or mistake defense was known prior to preparing the Albrechts' opposition papers to the summary judgment motion. See R. Vol. Five at Tab 56 (excerpt attach. to Counterdef.'s Mem. Supp. Summ. J.). Mr. Cairl testified that he even considered filing a cross-complaint

against Wanamaker on the basis of fraud or mistake, but decided not to do so "based upon our assessment of the situation." Id.[3]

Strategic considerations notwithstanding, a party cannot by negligence or design withhold issues. "The defense might have been weak, embarrassing, or dangerous to the defendant; and he may have chosen to refrain from presenting it for reasons important to himself; but this can have no present effect upon the conclusiveness of the determination in the plaintiff's favor." Sutphin, 99 P.2d at 656. As the California Supreme Court has stated: "It is the policy of the law to put an end to litigation, and to aid the vigilant, and not those who sleep upon their rights. . . . If [the party] failed to assert her claim properly, or to present the proper evidence in the first suit, she will not now be permitted in a second to litigate it. The principles stated herein are elementary." Bingham v. Kearney, 68 P. 597, 597-98 (Cal. 1902).

The federal courts have addressed factual settings almost identical to the present, and have reached the same result. In Saud v. Bank of New York, 929 F.2d 916 (2d Cir. 1991), Saud raised fraud as an affirmative defense to a bank's action to recover on a loan guaranty. Saud did not present any evidence to support this defense, and a judgment was

---

[3]The Albrechts argue that their defenses of fraud and mistake were not really in issue because Wanamaker voluntarily dismissed his other cause of action in the superior court after he received summary judgment on the note. This has no bearing. Fraud and mistake were specifically pleaded as defenses to Wanamaker's claim on the note, as well as to his other claim for an accounting. R. Vol. Three at Tab 31 (attach. to Decl. Opp'n. Summ. J.).

- 13 -

entered against him. In a subsequent action, Saud brought a civil RICO claim against the same bank based on the alleged fraudulent inducement of the loan guaranty that had been the subject of the prior action. The court determined that res judicata barred Saud from pursuing the RICO claim since it was based on the same factual predicate that would have supported his affirmative defenses in the prior action. Saud, 929 F.2d at 920; see also Rudell v. Comprehensive Accounting Corp., 802 F.2d 926, 927-28 (7th Cir. 1986), cert. denied, 480 U.S. 907 (1987) (where res judicata barred a litigant from using a fraud claim as "an affirmative weapon to undercut the validity of the agreement" when the same litigant could have urged fraud as a defense in a prior action); United States v. Silliman, 167 F.2d 607, 617 (3d Cir.), cert. denied, 335 U.S. 825 (1948) ("If an issue is raised and the party who has the burden fails in his proof and the issue is decided against him, he is just as much bound by collateral estoppel as though he had presented a barrel of testimony.").

We are convinced that the California courts would reach the same result. Applying collateral estoppel here will further the policy behind the doctrine. It will certainly promote judicial economy and prevent inconsistent judgments. Wanamaker's right to collect on the note was exhaustively litigated at every level of the California courts. It would undermine the efforts and integrity of those courts to permit the Albrechts to only now argue that the note and settlement agreement are voidable. Furthermore, allowing the Albrechts to proceed would upset the repose that should be

- 14 -

afforded Wanamaker's judgment, which after all was obtained some four years ago. Although the Albrechts claim that they can obtain relief without upsetting Wanamaker's California judgment, it is clear from their prayers for relief that the prior judgment would be, for all practical purposes, at least partially nullified or undermined.  See Restatement (Second) of Judgments § 22(2)(B)(1982) (a party is precluded from raising a claim that could have been raised as a defense in a previous action if the relationship between the claim now being raised and the defense is "such that successful prosecution of the second action would nullify the initial judgment or impair rights established in the initial action").

The Albrechts raise two final arguments.  First, they claim that the California superior court specifically "carved out" their fraud and mistake claims so that they could assert them another day.  We have carefully reviewed the order of the superior court and the record on appeal.  We find no such "carve out."  The superior court's only reference to separate claims that might be pursued another day relates to the Albrechts' arguments concerning Wanamaker's alleged breach of the settlement agreement by not permitting them entry onto the Wyoming land.  Considering that the first mention in the record by the Albrechts of a possible cross-complaint for fraud and mistake does not appear until they make a brief allusion to the matter in their motion for reconsideration of the

- 15 -

summary judgment order, we find it implausible that the superior court specifically preserved such claims in the summary judgment order.[4]

Second, the Albrechts repeatedly urge that because their causes of action for fraud and mistake were permissive, the claims cannot be barred by res judicata. Since the Albrechts may not have discovered the existence of these claims until after they filed their answer, it may be true that the claims were not compulsory under the California statute, Cal. Civ. Proc. Code § 426.30, which the Albrechts assert is similar to Fed. R. Civ. P. 13. We remind the Albrechts that statutory compulsory counterclaim rules are but one reservoir of preclusive principles. They do not negate independent rules of procedure and

---

[4]On page three of their motion for reconsideration of the superior court summary judgment order, the Albrechts state:

> Finally, the court's granting of summary adjudication contradicts the language of the Settlement Agreement that the Note was a part of a land sale contract. If the Court's ruling stands, then Albrecht must be allowed to file a cross-complaint to rescind the Settlement Agreement on the ground of fraud and mistake.

R. Vol. Four at Tab 37 (attach. to Supplemental App. to Pl.'s Reply). It is a little late to threaten a cross-complaint when summary judgment has already been granted. In any event, the Albrechts never did file a cross-complaint and never formally requested leave to do so.

In their reply brief to this Court, the Albrechts claim that they requested leave in the superior court to file a cross-complaint, but that it was denied as untimely. Reply Br. at 3, 6, 11. This assertion is either negligent or disingenuous. On page five of their petition for rehearing in the California Court of Appeals, the Albrechts state: "Regardless of whether defendants 'alluded' to a request to file a cross-complaint, defendants never made such a request. Furthermore, the trial court certainly never denied such a request, and the record contains nothing regarding such a denial." (emphasis in the original). R. Vol. Four at Tab 37 (attach. to Supplemental App. to Pl.'s Reply).

issue preclusion, such as that defenses are deemed denied and, in the absence of proof, untrue.  See, e.g., 18 Charles A. Wright et al., Federal Practice and Procedure § 4414 (1981) (explaining that independent rules of preclusion exist in addition to Rule 13).

Because the Albrechts' counterclaims are barred by collateral estoppel, it is unnecessary to consider whether they are also barred by the more general principles of estoppel applied by the district court.

Judgment AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge