## CITY OF HUTCHINSON v. EMIL WEGNER.[1]

November 2, 1923.

No. 23,553.

**License to take water revocable.**

1. An offer by a landowner to allow a city to connect its waterworks with an artesian well on his land, if the city would furnish him with water free of charge, was accepted and acted upon for more than 20 years. By accepting the offer the city avoided the expense of sinking a well on its own land. It incurred only an inconsiderable expense on the faith of the offer. The agreement was not in writing and the duration of the privilege granted was not specified. *Held* that all the city got was a license which was revocable at the will of the landowner and his grantee.

[1]Reported in 195 N. W. 535.

**Upon revocation licensee entitled to reasonable time to secure supply.**

2. Upon the revocation of such a license, the licensee should be given a reasonable time to secure a supply of water from other sources before the landowner is permitted to shut off the flow of water from his well to the waterworks.

Action in the district court for McLeod county to restrain defendant from interfering with the flow of water from an artesian well to the waterworks system of plaintiff city. The case was tried before Tifft, J., who made findings and granted an injunction. From an order denying his motion for judgment notwithstanding the decision or for a new trial, defendant appealed. Reversed.

*Kueffner & Marks*, for appellant.

*Sam G. Anderson*, for respondent.

LEES, C.

Appeal by defendant from an order denying a new trial of an action to enjoin him from cutting off the flow of water from an artesian well connected with the city water mains.

The complaint alleged that the land on which the well was located had been conveyed to defendant on March 6, 1920; that ever since the year 1894 the well supplied the city with all its water; that it was connected with the waterworks in that year pursuant to an agreement between the city and H. H. Ames, who was then the owner of the land; that the agreement was that the city should supply water for use at a flour mill owned and operated by Mr. Ames and located on the same land as the well, and, in consideration thereof, should have the perpetual use of the well for its water supply; that the city had constructed its water works at a cost of $20,000 in reliance upon the agreement; that defendant had knowledge of these facts when he purchased the property, and thereafter received water from the city pursuant to the agreement; that on June 10, 1922, he made demand for payment for the water the city took after he purchased the property, and gave notice that he would shut the water off unless his claim was paid; and judgment was demanded for a permanent injunction restraining him from doing so. In his answer, defendant denied the alleged agreement

and averred that he was willing to continue to furnish water, provided the city paid for it at the rate of $1,000 a year.

The court found that there was an agreement as alleged in the complaint; that in effect it amounted to a parol grant to the city of the perpetual use of the well in consideration of the city's promise to furnish free water to the mill. Appellant attacks this finding, and the first question presented is whether it is supported by the evidence.

Mr. Ames was a witness for the respondent and testified that, prior to the year 1894, a large artesian well had been sunk on his land. He used a portion of the flow of water to supply the boiler in the mill and to keep the flume from freezing in the winter. In 1894 he became president of the city council. The city had no waterworks. It owned the land across the street from the mill. The council determined to construct waterworks and to erect the pumping station on this land. There was talk of sinking a well there to get a supply of water. At this point we quote Mr. Ames' testimony:

"We thought if it would be any cheaper they might just as well hitch on that well and the engineer figured it would be cheaper, so we hitched on that. * * * The idea was that we should have water for the boiler, the city pressure, whenever we wanted it. * * * The arrangement was that the city should use the well and furnish us water whenever we needed it for the mill purposes * * * city water pressure."

The testimony of the city recorder and of one of the members of the council, both of whom were respondent's witnesses, was to the same effect. Acting upon this understanding, respondent erected the pumping station opposite the mill and connected the station with the well by a pipe, which extended across the street and for a few feet through Mr. Ames' land.

We are of the opinion that these facts fall short of supporting the finding that there was a parol grant of the perpetual right to use the well. The grant of such a right would create an interest in the land. In a limited sense it would give the grantee

control of the land and would deprive the owner of the unqualified right of possession. It would be an easement in the land, and the statute of frauds, sections 7002, 7003, G. S. 1913, would apply and the grant would be void unless there was performance by the respondent to such an extent that it would be a fraud upon it to set up the invalidity of the grant. Section 7004, G. S. 1913; 3 Dunnell, Minn. Dig. § 8885. Viewed in the light most favorable to respondent, the evidence simply shows that Mr. Ames gave respondent permission to use the well without specifying how long the privilege should continue. There was no obligation on the part of respondent to continue to take water from the well, or on the part of Mr. Ames to furnish water any longer than he chose to do so. The evidence required a finding that all the respondent got was a license to make use of the well.

Calling it a license instead of an easement leads to difficulty, for the vexed question of when a license is revocable and when it is not, at once presents itself. The distinction between an easement and an irrevocable license is subtle. This court has said that an easement always implies an interest in the land upon which it is imposed, and, therefore, lies only in grant, while a license carries no such estate and is generally revocable at the will of the licensor, Minneapolis Western Ry. Co. v. Minneapolis & St. L. Ry. Co. 58 Minn. 128, 59 N. W. 983; that the right to revoke a license is not affected by the fact that the licensee expended money on the faith thereof; that whether an easement or a license was created depends largely on the intent of the parties, and that the law is jealous of a claim to an easement, and, if such a claim is asserted, it must be proved clearly. Johnson v. Skillman, 29 Minn. 95, 12 N. W. 149, 43 Am. Rep. 192; Minneapolis Mill Co. v. Minneapolis & St. L. Ry. Co. 51 Minn. 304, 53 N. W. 639. But, in connection with these general statements, it has also been said that the nature of a parol agreement may be such as to indicate an intention to give an interest in the land, with a permanent right of occupancy entitling the licensee to equitable relief by showing improvements and expenditures made in reliance upon the license. This thought was

expressed in Minneapolis Mill Co. v. Minneapolis & St. L. Ry. Co. supra, in the following language:

"The principle upon which courts of equity sometimes apply the doctrine of equitable estoppel to cases where the entry has been under a license is that the conduct of the licensor has been such that it would be a fraud on the licensee to permit the licensor to deny that there was a contract for an interest in the land, and hence they treat the case as one of a parol contract partly performed, which the court will enforce."

The principle was considered in Munsch v. Stelter, 109 Minn. 403, 124 N. W. 14, 25 L. R. A. (N. S.) 727, 134 Am. St. 785, where it was held, after reviewing the earlier cases, that a license could not be revoked when the licensor had joined with the licensee in the construction of a ditch to drain the lands of both parties, and thereafter the licensor dammed up the ditch and deprived the licensee of the benefits he derived from its construction, while retaining the ditch for his own use. The decision was put upon the ground that a revocation of the license under such circumstances would not be permitted because it would operate as a fraud upon the licensor.

The same principle was involved in Hanson v. Beaulieu, 145 Minn. 119, 176 N. W. 178. That was a case where a party-wall was constructed, pursuant to an oral agreement between the plaintiffs and one from whom defendants subsequently acquired title. The wall occupied 6 inches of defendants' land. Speaking for the court, Mr. Justice Holt said that, after the agreement had been fully executed by the erection of the wall, equity would recognize and give adequate protection to the rights thereby acquired despite the statute of frauds, and that plaintiffs had an easement in that part of defendants' lot upon which the wall stood.

Although the general rule stated in Minneapolis Mill Co. v. Minneapolis & St. L. Ry. Co. supra, seems to be supported by a preponderance of authority, many courts have declined to follow it. The opposing views are set forth in the cases cited in the note to Stoner v. Zucker, 7 Ann. Cas. 704, and in 17 R. C. L. 583; 2 Tiffany Real Prop. 1208, 1210; 4 Minn. Law Rev. 370 and 7 Minn. Law Rev. 252.

The latest utterances of this court indicate that the rule has only a limited application and that it will not be extended. Nevertheless it is our conclusion that the present case fairly falls within the scope of the rule, and that unless Minneapolis Mill Co. v. Minneapolis & St. L. Ry. Co. is overruled, respondent cannot prevail. Respondent rests its case squarely upon Munsch v. Stelter, supra, asserting that if it be granted that all it has is a license, it would amount to a fraud to permit a revocation under the circumstances disclosed by the evidence. Briefly stated, these are our reasons for a contrary opinion.

The fact that the licensee furnished water at the mill as a return for the privilege of connecting with the well is of no particular importance. The rule is that the revocability of a license is not affected by the fact that a consideration was paid for it, Johnson v. Skillman, supra; 2 Tiffany, Real Prop. 1206, 1207, although it is a circumstance tending to show that the grant of an easement and not a bare license was intended. 2 Tiffany, Real Prop. 1208.

In availing itself of the privilege, respondent's expenditures were inconsiderable. It saved money by not sinking a well on its own land. Aside from the expense of laying a 10-inch pipe from its pumping station to the well, it had no special outlay. It had intended to construct its own well, and would have done so if Mr. Ames had not offered the use of his. It may be inferred that he made the offer because he was an officer of the city and was interested in saving its money. It will not do to say that the city constructed its system of waterworks and expended $20,000 on the faith of the offer. It made no substantial improvements it would not have made had it known that all it was getting was a revocable license. It adopted the easiest, cheapest and most natural way of getting water. The duration of the arrangement agreed upon was not mentioned. It is not unreasonable to suppose that it was intended to be temporary, and the best guide to a conclusion with respect to the nature of the right created is the intention of the parties as evidenced by their words and acts. Moreover, there was nothing formal about the arrangement. If respondent was acquiring a perpetual right to take the water, it would seem that, either when the

agreement was made or subsequently, its terms would have been reduced to writing. We fail to see how the withdrawal of permission to take the water will work a fraud upon respondent. By sinking a well on its own land, it can still do what it intended to do in the first instance, or, if it prefers, it can avail itself of appellant's offer to continue to furnish water for a consideration.

Cases which have been helpful in our consideration of the instant case in its various phases are Wiseman v. Lucksinger, 84 N. Y. 31, 38 Am. Rep. 479; Lawrence v. Springer, 49 N. J. Eq. 289, 24 Atl. 933, 31 Am. St. 702; Jackson & L. Co. v. Philadelphia, W. & B. R. Co. 4 Del. Ch. 180; Fowler v. Delaplain, 79 Oh. St. 279, 87 N. W. 260, 24 L. R. A. (N. S.) 100; Howes v. Barmon, 11 Idaho, 64, 81 Pac. 48, 69 L. R. A. 568, 114 Am. St. 255.

Since there must be a new trial, it is proper to add that in any event the respondent should have a reasonable time to make provision for a supply of water from other sources before its present source of supply is cut off, and, in the interval, appellant should be enjoined from interfering with the flow of water from the well to the waterworks.

Order reversed and a new trial granted.