**STATE FARM FIRE & CASUALTY CO., petitioner, Appellant,**

v.

**Steven SHORT and George Keller, Respondents.**

Nos. C3–89–828.

Supreme Court of Minnesota.

July 27, 1990.

Robert W. Murnane, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, for petitioner, appellant.

Ralph S. Palmer, Palmer Law Firm, Roseville, for Steven Short.

Daniel T. Cody, St. Paul, for George Keller.

KEITH, Justice.

The issue in this case is whether Steven Short, on September 15, 1985, was a resident of his father's household under the terms of his father's State Farm Fire & Casualty Company (State Farm) home-owners and umbrella insurance policies. The jury rendered a special verdict finding Short was a resident and the trial court entered judgment declaring appellant State Farm obligated to defend Short. The court of appeals affirmed. *State Farm Fire & Cas. Co. v. Short*, 448 N.W.2d 560 (Minn. App.1989). We affirm.

On September 15, 1985, George Keller was severely injured in an accident, which he later claimed was due to Steven Short's negligence. In the early summer of 1986 a lawyer contacted Short to inform him that he would initiate a claim on behalf of Keller against Short's father's insurance policies. Short notified his father who promptly contacted, on June 26, 1986, a State Farm representative to report the potential claim.

State Farm had issued both a home-owners and an umbrella insurance policy to Short's father. Both policies included in their definition of "insured" those relatives of the named insured who were "residents" in the named insured's "household." State Farm interviewed both Short and his father during July 1986 regarding residency, denied coverage and then brought this action in December 1986 to have the issue adjudicated.

Because the question of residency is fact-specific, circumstances surrounding and details of Short's sojourn at home are presented here in detail.

Short had moved out of his parents' home after high school graduation in 1972. For the next eleven years, he was self-sufficient and only intermittently stayed in his parents' home. He married, played semi-professional and professional hockey, and was employed. In October 1983, at the age of 29, Short moved back into his parents' home, bringing all of his belongings with him. His marriage and hockey career had ended and his foray into business had failed; he was in serious financial trouble and unemployed. His parents welcomed him home. During the winters of 1983–84 and 1984–85, he cared for his parents' home and dog while they wintered in Arizona. His father kept insurance on a family car and directed him to drive it during the winter. During the summer of 1984, Short worked in construction. From fall 1984, he worked at the Roseville VFW, first part-time, then full-time until he quit in 1986. He continued to live in his parents' home until he leased an apartment in October 1985, several weeks after Keller's injury.

From the period October 1983 until October 1985, Short used his parents' home address for mail, for his driver's license, for automobile and voter registration, for tax purposes and for phone calls. He had his own bedroom with a closet where he kept his clothes. He helped with household chores, particularly mowing the lawn, cleaning the pool and shoveling snow, while his mother often did his laundry. He ate meals at his parents' home, although to what extent was disputed, and usually slept there. He paid for his phone calls but did not pay board and room.

Also during the period October 1983 to October 1985, Steven Short spent some time away from his parents' home. In particular, during the period May 1985 to October 1985, he went over to his girlfriend's apartment nearly every night after

work ended around 2:00 a.m. and would stay until anytime from 5:00 a.m. until noon. He did not have a key to her apartment, kept no clothes or other belongings there, received no phone calls or mail there, and did no laundry there. He always returned home to shower, shave and dress before commencing work.

In October 1985, a couple of weeks after Keller's injury, Short decided to move out of his parents' home and into an apartment he leased with his girlfriend. When he moved, he changed the address for his driver's license, bought his father's car, removed all his personal belongings from his parents' home, and leased furniture for the apartment.

The suit was tried before a six-person jury on March 23 and 24, 1989. At the end of trial, the court gave to the jury instructions regarding factors to be considered in determining Steven Short's residency, including his age; whether he established a separate residence from his parents; whether he was dependent on his parents or self-sufficient; duration of periods he spent in his parents' home; his intent with respect to place of residence; location of his personal effects; his mailing address; voter registration, driver's license and car registrations; whether he lived under the same roof as his parents; and whether the relationship between his parents and him was close, personal and substantial as distinguished from one that was occasional or casual. The court pointed out to the jury not one item was conclusive.

█ 1. State Farm contends that those instructions were erroneous because they did not contain as one factor, which would be dispositive, whether it was "reasonable to conclude that [Short and his parents] would consider their relationship ' * * * in contracting about such matters as insurance or in their conduct in reliance thereon.'" *Firemen's Ins. Co. v. Viktora,* 318 N.W.2d 704, 706 (Minn.1982). State Farm had requested such an instruction, but was refused.

█ In determining jury instructions, trial courts have broad discretion. *Alholm v. Wilt,* 394 N.W.2d 488, 490 (Minn.1986).

A party is entitled to a specific instruction on his theory of the case only "if there is evidence to support the instruction and it is in accordance with applicable law." *Sandhofer v. Abbott–Northwestern Hosp.,* 283 N.W.2d 362, 367 (Minn.1979) (citation omitted). Short's father testified that the question of where his son was living "never arose" when he renewed his insurance policies. The trial court refused the requested instruction on the grounds that it was not required by Minnesota law, nor would it be particularly enlightening for the jury.

In *Viktora,* this court quoted three circumstances the Wisconsin supreme court had identified as indicative of residency in an insured's household. Those were:

(1) Living under the same roof; (2) in a close, intimate and informal relationship; and (3) where the intended duration is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship " * * * in contracting about such matters as insurance or in their conduct in reliance thereon."

*Viktora,* 318 N.W.2d at 706 (quoting *Pamperin v. Milwaukee Mut. Ins. Co.,* 55 Wis.2d 27, 37, 197 N.W.2d 783, 788 (1972)). This court then noted that the first two factors are encompassed by Minnesota's definition of "household," which for insurance purposes is generally defined as being synonymous with "family" and as including those who dwell together under the same roof as a family. *Id.* at 707 (citations omitted). The concept of family thus encompasses the idea of a "close, intimate and informal relationship," as expressed in *Pamperin. Id.* at 706–07. In addition to the first two factors, this court noted the existence of a significant durational component, the third circumstance enumerated in *Pamperin.* It did not, however, amplify the concept of duration by discussing or assessing whether the parties considered their relationship in contracting for homeowner's insurance. *Id.* Consequently, the trial court did not read *Viktora* as mandating consideration of whether it would be reasonable to conclude that the parties

would consider the relationship " \* \* \* in contracting about such matters as insurance or in their conduct in reliance thereon" and we agree.

Length of stay sufficient to support a finding of residency in the insured's household, evaluated in connection with the two other factors, leads to the conclusion that the parties would expect household and umbrella insurance to cover the entire family unit dwelling under the insured's roof. The conclusion flows from a finding of residency, rather than being itself a dispositive factor. Considering family members' relationships when renewing homeowners and umbrella insurance policies would be futile, since determination of residency is made as of the date the coverage becomes necessary, in this instance as of September 15, 1985, not the date the insurance is first obtained or renewed. Few, if any, insureds could predict when a family member might return and again become a member of the household and a resident for insurance purposes. A family member could return home to dwell under the insured's roof for a period of less than a year, yet be a resident, as was the case in *Viktora*. An insured with a family simply expects the insurance to cover all members of the family resident in its household, as the terms of the policy provide.

We hold, therefore, that the jury instructions, while omitting from the jury's evaluation the question of whether "it [was] reasonable to conclude that the parties would consider their relationship in contracting [for] insurance or in their conduct in reliance thereon," nevertheless conveyed a clear, fair and correct understanding of applicable law. *Gleeman v. Triplett*, 301 Minn. 504, 506, 222 N.W.2d 787, 788 (1974); *Alholm*, 394 N.W.2d at 490. Therefore the trial court did not abuse its discretion in refusing the proffered instruction.

■ 2. State Farm also claims reversal is mandated because respondent counsel's opening statement informed the jury of the effect of its answer to the special verdict in violation of Minn.R.Civ.P. 49.01. Rule 49.-01, on special verdicts, provides in relevant part: "[N]either the court nor counsel shall inform the jury of the effect of its answers on the outcome of the case." *See also Carufel v. Steven*, 293 N.W.2d 47, 48 (Minn.1980). The purpose of the rule is to prevent passion and prejudice from affecting the verdict. *McCourtie v. United States Steel Corp.*, 253 Minn. 501, 518, 93 N.W.2d 552, 563 (1958).

■ Whether a violation of Rule 49.01 entitles appellants to a new trial is within the sound discretion of the trial court. *Togstad v. Vesely, Otto, Miller & Keefe*, 291 N.W.2d 686, 696 (Minn.1980). The trial court's decision will be reversed only upon a clear showing of abuse of discretion or if the improper comments prejudiced defendant to such an extent that allowing the result to stand would be unjust. *See Jack Frost, Inc. v. Engineered Bldg. Components Co.*, 304 N.W.2d 346, 352 (Minn. 1981); *cf. McCourtie*, 253 Minn. at 517–18, 93 N.W.2d at 563 (where answer to special verdict question clearly indicates it was rendered under influence of passion and prejudice, which arose from improper comments to jury on effect its answers to special verdicts would have on ultimate right of either party to recover, Rule 49.01 has been violated and new trial is required).

In the disputed portion of his opening statement, counsel for Keller stated,

This lawsuit is brought from State Farm Fire and Casualty against Steven Short and George Keller. And they're asking this court, with your help, to make an adjudication that Mr. Steven Short is not covered under those policies, these two that we are talking about, and that Mr. Keller is not entitled to get compensation for his injuries from State Farm Mutual as an insurer.

State Farm promptly objected to the statement, which indirectly informed the jury that the effect of finding Short not covered by the policies would be to deny Keller compensation from State Farm as insurer, and requested a mistrial. In support of its request, State Farm also argued that the prejudicial effect of the improper statement was augmented by the fact that Keller appeared later in court in his wheelchair. Keller, however, was a party to the lawsuit

because it affected his rights as well as those of Short. Although Keller was not present in the courtroom when the statement was made, as a party, Keller had every right to be in the courtroom. That right negates any possible prejudice against Short or State Farm which his presence later in the courtroom might arouse in the jury.

With respect to the improper statement itself, it merely reiterated the purpose of the lawsuit. State Farm, in its opening statement, had already explained to the jury that Short's father had insurance, that on a day during which the policy was in effect an accident occurred in which Keller was injured, and that Short had been informed by Keller's attorney to notify his father and the insurance company that a claim would be made against Short. The judge had also explained to the jury at the outset of the case that the lawsuit concerned the question of whether Short was a resident of the household and accordingly, whether there was insurance coverage. Because the jury had already been informed of the purpose of the lawsuit, the judge denied the request for a mistrial and the motion for a new trial.

This court has recognized that cases are not "tried before a jury in a vacuum and that in order to understand the issues the jury must necessarily know something of the background and setting of the lawsuit." *McCourtie*, 253 Minn. at 516, 93 N.W.2d at 562. The opening statement said no more than State Farm had already implied, if not expressly stated. In addition, to counteract any possible prejudice, the court offered to give a cautionary instruction. State Farm requested one with respect to opposing counsel and the trial court did instruct Keller's counsel to refrain from telling the jury about any fact finding function it performs or about what effect its answers would have.

We do note that the wording chosen by opposing counsel could only have been meant to create sympathy for Keller and to lay guilt on the jury if they denied Short coverage and we admonish counsel against such usage. Nevertheless, the effect of the improper statement was not prejudicial when seen in this fact situation. We cannot say that the jury's special verdict resulted from passion or prejudice when the facts elicited during trial support the finding of residency.

We hold, therefore, that although an improper statement by counsel informing the jury of the effect its answers to a special verdict would have on the rights of the parties, is a violation of Minn.R.Civ.P. 49.01 (1988), the trial court's denial of a motion for a new trial does not constitute reversible error when the statement reiterates the purpose of the lawsuit already explained to the jury by both judge and plaintiff's counsel, and the facts fully support the verdict, thus negating any possible influence from passion or prejudice.

We affirm.

KELLEY, J., took no part in the consideration or decision of this case.