PINE VALLEY MEATS, INC.,
a Wisconsin corporation,
Respondent,

v.

CANAL CAPITAL CORPORATION, a
Delaware corporation, Appellant,

Housing and Redevelopment Authority
of the City of South Saint Paul,
Respondent.

No. C5–96–2051.

Court of Appeals of Minnesota.

July 15, 1997.

Charles N. Nauen, William A. Gengler, Christian M. Sande, Lockridge Grindal Nauen & Holstein, P.L.L.P., Minneapolis, for Respondent Pine Valley Meats.

J. Patrick McDavitt, Janel E. LaBoda, Briggs and Morgan, Minneapolis, for Appellant.

Bradley N. Beisel, Scholle and Beisel, Ltd., Minneapolis, for Respondent City of South St. Paul HRA.

Considered and decided by NORTON, P.J., and PETERSON and AMUNDSON, JJ.

## OPINION

NORTON, Judge.

Appellant challenges the trial court's denial of judgment notwithstanding the verdict or a new trial and alleges various errors at trial. We affirm in part, reverse in part, and remand.

## FACTS

Respondent Pine Valley Meats, Inc. (Pine Valley) brought this action against appellant Canal Capital Corporation (Canal) and respondent Housing and Redevelopment Authority of the City of South St. Paul (the HRA) for damages resulting from Canal's destruction of a cattle walkway connecting Pine Valley's meat packing plant and the South St. Paul stockyards.

In 1936, the St. Paul Union Stockyards Company (the Stockyards Company) sold Morris Rifkin approximately one-half acre of land for the purpose of operating a meat packing plant. On July 7, 1936, the parties entered into an indenture and a separate agreement that created certain rights and responsibilities regarding the land Rifkin had purchased. As part of the 1936 Agreement, the Stockyards Company agreed to "provide and maintain * * * a suitable, fenced pas-

sage-way for the movement of livestock between said land of [Rifkin] and the Saint Paul Union Stockyards."

Canal is the successor to the Stockyards Company. In 1986, Pine Valley purchased Rifkin's meat packing plant and obtained a nonrecourse assignment of Rifkin's interest in the 1936 Agreement. In 1994, the HRA purchased from Canal a parcel of land, a small portion of which the cattle walkway crossed.

Pine Valley used the cattle walkway to move cattle from the stockyards to its meat packing plant. On March 22, 1995, Canal ordered the demolition of the cattle walkway without any notice to Pine Valley. Pine Valley soon closed its meat packing plant and commenced this lawsuit against Canal and the HRA. The trial court granted Pine Valley's motion for temporary injunction and ordered Canal to reconstruct the cattle walkway.

■ A jury returned a verdict in favor of Pine Valley and against Canal on the claims of breach of contract, promissory estoppel, tortious interference with prospective business relations, and trespass, and awarded $350,000 in compensatory damages and $50,000 in punitive damages. The jury also found in favor of Pine Valley on its breach of contract claim against the HRA, although Pine Valley sought no damages. The trial court denied motions by Canal and the HRA for judgment notwithstanding the verdict (JNOV) or a new trial and ordered Canal and

the HRA to provide a cattle walkway for Pine Valley's use. The trial court also granted Pine Valley's motion for costs and disbursements, including prejudgment interest in the amount of $20,702.32.[1]

## ISSUES

1. Did the trial court err in denying Canal's motion for JNOV or a new trial?

2. Did the trial court err in awarding prejudgment interest?

3. Did the trial court err in denying the HRA's motion for JNOV or a new trial?

4. Did the trial court abuse its discretion in granting Pine Valley's motion for specific performance and injunctive relief?

5. Did the trial court err in concluding that the obligation to provide a cattle walkway did not constitute an interest in land?

6. Did the trial court err in granting Pine Valley's motion for summary judgment on Canal's counterclaim for an accounting?

## ANALYSIS

### 1. Canal Motion for JNOV or New Trial

#### a. Contract Claim

■ We first consider whether the original parties to the 1936 Agreement intended that the obligation to provide a cattle walkway would create a license or an easement. Before trial, the district court ruled that the cattle walkway obligation created a license. We are not bound by and need not give

1. While both Canal and the HRA challenge various rulings by the trial court in favor of Pine Valley, only Canal filed a direct appeal. The HRA filed a notice of review in the appeal taken by Canal. Thus, the HRA, as a respondent in Canal's appeal, seeks review of a decision in favor of its co-respondent, Pine Valley. Pine Valley also filed its own notice of review, challenging decisions in favor of appellant Canal and the HRA. A notice of review is the proper mechanism for a respondent to raise issues on which it is adverse to the *appellant,* but it is not the proper route for a respondent to raise issues on which it is adverse to a *co-respondent. Leaon v. Washington County,* 397 N.W.2d 867, 872 (Minn. 1986).

The proper procedure would have been for the HRA to file a separate appeal and for Pine Valley to file a notice of review in each of the appeals, raising the issues on which it is adverse to each

appellant. The separate appeals by Canal and the HRA could have been consolidated on motion of any party. Alternatively, the HRA and Canal could have filed a joint appeal, because both are aggrieved by the trial court's decision. *See* Minn. R. Civ.App. P. 103.02 (joint, consolidated appeals). If a joint appeal had been filed, Pine Valley could have filed a notice of review, raising issues on which it is adverse to the joint appellants.

The parties have briefed all of the issues and there has been no prejudice. In the interests of justice, we will review the issues despite the defective notices of review. *See Leaon,* 397 N.W.2d at 872 (interests of justice served by accepting plaintiffs' defective notice of review of claims involving non-appealing defendants, where no one sought to dismiss plaintiffs' "appeal").

deference to a district court's decision of a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

[A] license is not an estate but a permission giving the licensee a personal legal privilege enjoyable on the land of another. *Minnesota Valley Gun Club v. Northline Corp.*, 207 Minn. 126, 128, 290 N.W. 222, 224 (1940). "Because a license is generally revocable, it is not an encumbrance upon land." *Chicago & N.W. Transp. Co. v. City of Winthrop*, 257 N.W.2d 302, 304 (Minn.1977). In contract, an easement is defined as

an interest in land in the possession of another which entitles the owner of such interest to a limited use or enjoyment of the land in which the interest exists.

*Minneapolis Athletic Club v. Cohler*, 287 Minn. 254, 258, 177 N.W.2d 786, 789 (1970) (citing Restatement of Property § 450 (1944)). The description of the easement must identify the land that is subject to the easement and express the intention of the parties. *Miller v. Snedeker*, 257 Minn. 204, 215, 101 N.W.2d 213, 222 (1960).

We can discover the original parties' intention with regard to the cattle walkway obligation only from the 1936 Agreement and accompanying indenture. Those documents suggest the cattle walkway obligation created a license. The indenture identified a perpetual easement for the passage of vehicles and persons along and upon a private roadway, but made no mention of the cattle walkway. *See Larson v. Amundson*, 414 N.W.2d 413, 417 (Minn.App.1987) (language of deed expresses final, binding agreement between grantor and grantee). Moreover, the indenture stated that the covenants and agreements "shall run with the land," yet the parties did not describe the cattle walkway obligation as an easement or an obligation "for all time" or an obligation that "shall run with the land."

Pine Valley argues that the formality of the 1936 Agreement indicates the parties'

intention that Rifkin would acquire an easement in the property. The 1936 Agreement, however, went further than simply to provide for a cattle walkway. It described obligations by both parties, for example Rifkin's obligation to pay "yardage fees"—livestock fees assessed by the stockyards. On this record, no evidence compels a conclusion that the original parties to the 1936 Agreement intended the cattle walkway obligation to create an interest in land as opposed to mere permission to use the land. *See City of Hutchinson v. Wegner*, 157 Minn. 41, 44, 195 N.W. 535, 537 (1923) ("the law is jealous of a claim to an easement, and, if such a claim is asserted, it must be proved clearly"). We conclude that, as a matter of law, the parties intended that the cattle walkway obligation of the 1936 Agreement would create a license.

■ We next review whether the trial court's jury instruction on irrevocable licenses was an error of law. The jury charge contained this instruction:

In a pretrial ruling, the Court determined that the 1936 agreement created a license which permitted Pine Valley and its predecessor (the Rifkin Company) to use the cattle walkway. A license is the permission to do something on the land of another that otherwise would be unlawful.

A license may be revoked by the person or entity which granted it ("the licensor"). Even though a license to use land may be revoked at the will of the licensor, the licensor may be bound by contract not to exercise his will to revoke the license until after the purpose of the license has been accomplished.[2]

Canal contends this instruction was an error of law that required a new trial. A trial court has broad discretion in determining jury instructions. *State Farm Fire & Cas. Co. v. Short*, 459 N.W.2d 111, 113 (Minn. 1990). If the jury instructions contain errors of law, a new trial is warranted only if the

---

2. From the record, it appears that the trial court based this instruction on the Restatement:

A licensee * * * who has made expenditures of capital or labor in the exercise of his license in reasonable reliance upon representations by the

licensor as to the duration of the license, is privileged to continue the use permitted by the license to the extent reasonably necessary to realize upon his expenditures.

Restatement of Property § 519(4) (1944).

errors "destroy the substantial correctness of the charge, cause a miscarriage of justice, or result in substantial prejudice." *Kirsebom v. Connelly,* 486 N.W.2d 172, 174 (Minn.App. 1992).

In *Minneapolis Mill Co. v. Minneapolis & St. Louis Ry. Co.,* 51 Minn. 304, 313, 53 N.W. 639, 641 (1892), the supreme court explained:

A licensee is conclusively presumed, as a matter of law, to know that a license is revocable at the pleasure of the licensor; and if he expends money in connection with his entry upon the land of the latter he does so at his peril.

Nevertheless, the supreme court acknowledged that the doctrine of equitable estoppel would apply to cases where the licensor's conduct was such that allowing the licensor to revoke the license would be a fraud on the licensee. *Id.* The supreme court reviewed the licensor's conduct and found no evidence of fraud, deception, or misrepresentation. *Id.* The record here contains no evidence to support a claim of an irrevocable license between the original parties. But we must also review the conduct of Canal towards Pine Valley for evidence of fraud, deception, or misrepresentation.

In 1986, when Pine Valley considered purchasing the meat packing plant and succeeding Rifkin to the 1936 Agreement, Pine Valley met with Canal to discuss the cattle walkway. Pine Valley expressed its need for an access walkway to get the cattle from the stockyards to the plant. Canal offered Pine Valley a walkway, and as long as the plant was in existence, Pine Valley had a right to use the walkway. Canal never claimed that it could terminate Pine Valley's right to use the cattle walkway or that Pine Valley needed permission to use the cattle walkway. After purchasing the plant, Pine Valley expended capital and labor to renovate the plant before opening. Pine Valley spent over $1 million to re-ventilate the kill floor and replace the roofs, the refrigeration system, and all the electrical and plumbing systems.

Evidence of Canal's misrepresentations as to the unlimited duration of the cattle walkway obligation, coupled with Pine Valley's expenditures in reasonable reliance, supports a claim for an irrevocable license. The trial court did not abuse its discretion in instructing the jury with regard to an irrevocable license.

■ Canal argues the trial court erred in instructing the jury that a contract containing no express durational term continues as long as it serves the purpose for which the contract was created. *See Hayes v. Northwood Panelboard Co.,* 415 N.W.2d 687, 691 (Minn.App.1987) (contract containing no definite duration term, expressed or implied, is terminable at will by either party upon reasonable notice) (citing *Benson Co–op. Creamery Ass'n v. First Dist. Ass'n,* 276 Minn. 520, 526, 151 N.W.2d 422, 426 (1967)), *review denied* (Minn. Jan. 28, 1988). The instructions on a "continuing contract" essentially mimic the instructions for an irrevocable license. Even if the continuing contract instruction were contrary to established law, we cannot say that it destroyed the substantial correctness of the charge, caused a miscarriage of justice, or resulted in substantial prejudice so as to warrant a new trial. *See Kirsebom,* 486 N.W.2d at 174 (setting forth these bases for new trial). The trial court properly denied Canal's posttrial motions on the breach of contract claim.

#### b. Other Claims

■ We turn our attention to Pine Valley's claims for promissory estoppel, tortious interference with prospective business relations, and trespass. "Promissory estoppel is the name applied to a contract implied in law where no contract exists in fact." *Del Hayes & Sons, Inc. v. Mitchell,* 304 Minn. 275, 283, 230 N.W.2d 588, 593 (1975) (footnote omitted). Because the cattle walkway obligation was part of the 1936 Agreement, the trial court erred in submitting the promissory estoppel claim to the jury.

■ A plaintiff alleging breach of contract is limited to damages flowing from the breach except in "exceptional cases" where the defendant's breach of contract is accompanied by an independent tort. *Wild v. Rarig,* 302 Minn. 419, 440, 234 N.W.2d 775, 789 (1975), *appeal dismissed and cert. denied,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976).

A breach of contract even if intentional, malicious or in bad faith, is not enough to convert a contract action into a tort action. *Hay v. Dahle*, 386 N.W.2d 808, 811 (Minn. App.1986). Even if Canal acted maliciously, intentionally, and in bad faith when it destroyed the cattle walkway, Canal's obligation to maintain the cattle walkway arose from the 1936 Agreement. Pine Valley is thus limited to damages for breach of contract. The trial court erred by submitting the tort claims to the jury.

■■■ Punitive damages are not available for breach of contract; only when an independent tort accompanies a breach of contract may a plaintiff seek punitive damages. *Molenaar v. United Cattle Co.*, 553 N.W.2d 424, 428 (Minn.App.1996), *review denied* (Minn. Oct. 15, 1996). Because no independent tort claims accompanied the breach of contract here, the punitive damages award must be reversed.

■■■ Canal argues that the compensatory damages award was not supported by the evidence. A damage verdict may be disturbed only if it is "manifestly and palpably contrary to the evidence." *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 256 (Minn.1980) (quoting *Carpenter v. Mattison*, 300 Minn. 273, 276, 219 N.W.2d 625, 629 (1974)). Pine Valley chose to identify its losses by focusing on the costs directly related to the plant shutdown. Canal had the burden to convince the jury that the claimed damages were unreasonable. The compensatory damages award of $350,000 is not "manifestly and palpably contrary to the evidence," and may stand. *Id.*

### 2. Prejudgment Interest

■■■ Canal contends that the trial court erred in awarding prejudgment interest. A plaintiff is entitled to prejudgment interest on a final judgment

> where the damages were readily ascertainable by computation or reference to generally recognized standards such as market value and not where the amount of damages depended upon contingencies or upon jury discretion (as in actions for personal injury or injury to reputation).

*Potter v. Hartzell Propeller, Inc.*, 291 Minn. 513, 518, 189 N.W.2d 499, 504 (1971). Here, Pine Valley's expert testified that the "usual analysis" of lost profits was inapplicable because Pine Valley always operated at a loss. Pine Valley's expert further testified that his calculation of $190,000 in fixed costs, during the plant's closedown period, was "an unusual damage calculation." Although Pine Valley's expert testified that total damages were in the range of $400,000 to $500,000, the jury awarded $350,000. These facts reveal that prejudgment interest is not appropriate here. Pine Valley's damages were not readily ascertainable; indeed, the damages award required substantial jury discretion. *Cf. Summit Court, Inc. v. Northern States Power Co.*, 354 N.W.2d 13, 16 (Minn.1984) (prejudgment interest appropriate where damages were based on fixed costs readily ascertainable prior to trial and required little jury discretion in ascertaining final award). We reverse the award of prejudgment interest.

### 3. HRA Motion for JNOV or New Trial

■■■ The HRA appeals the denial of its motion for JNOV or a new trial. Pine Valley sued the HRA for breach of contract because the cattle walkway crossed land that the HRA had purchased from Canal. The warranty deed between Canal and the HRA explicitly states that the HRA was subject to the 1936 Agreement. Because the cattle walkway crosses the HRA's property, the HRA was subject to any rights that Pine Valley obtained from the 1936 Agreement.

The HRA argues that it cannot be restricted from future interference with the cattle walkway because the cattle walkway obligation only gave rise to a license, not an easement. The jury, however, effectively determined that Pine Valley held an irrevocable license, which, although not an interest in land, has the same effect as an easement. *See City of Hutchinson*, 157 Minn. at 44, 195 N.W. at 536 ("The distinction between an easement and an irrevocable license is subtle."). The HRA's objection to the trial court's jury instructions is also based on the argument that Pine Valley did not receive an interest in land. The trial court did not abuse its broad discretion in its jury instructions. *See Short*, 459 N.W.2d at 113 (court

has broad discretion in formulating jury instructions). The trial court properly denied the HRA's posttrial motion.

### 4. Specific Performance and Injunctive Relief

Canal and the HRA argue that the trial court erred by granting Pine Valley's motion for specific performance and injunctive relief. We will not disturb the trial court's order for specific performance absent a clear abuse of discretion. *Lilyerd v. Carlson*, 499 N.W.2d 803, 811 (Minn.1993).

"If real property is involved, specific performance is a proper remedy, even if the other remedies would be adequate." *Schumacher v. Ihrke*, 469 N.W.2d 329, 335 (Minn. App.1991). The trial court ordered that Canal and the HRA provide a cattle walkway for Pine Valley pursuant to the terms of the 1936 Agreement and enjoined Canal and the HRA from interfering with Pine Valley's lawful use of the cattle walkway. The trial court reasoned that the compensatory damages only restored Pine Valley for past damages, but gave no protection against the risk of a future destruction of the cattle walkway. The trial court did not abuse its discretion in granting specific performance and injunctive relief.

### 5. Recordable Interest

Pine Valley seeks a remand to the trial court with directions to issue an order in recordable form confirming that the cattle walkway obligation gave rise to an easement in its favor. As we have noted, the cattle walkway obligation only gave rise to a license in Pine Valley's favor. With no legal interest in the property, there is no reason to include the license (even if non-revocable) as part of the specific legal description of the properties.

### 6. Accounting Counterclaim

Canal counterclaimed for unpaid yardage fees dating back to Pine Valley's 1986 purchase of the meat packing plant. In 1989, Canal sold the stockyards operations to USK Acquisition Corporation, now known as United Market Services Company (UMS).

The trial court granted summary judgment against Canal, determining that Canal did not have standing to assert the claim for unpaid yardage fees because Canal assigned its rights under the 1936 Agreement to UMS. Canal argues that issues of fact exist as to whether Canal intended to assign its rights to the yardage fees to UMS.

The purchase agreement between Canal and UMS covered the sale of assets related to Canal's stockyards businesses at four midwest locations. UMS agreed to purchase from Canal, and Canal agreed to "sell, transfer, assign or otherwise convey" to UMS, "the Stockyards Business as a going concern" and assets including

> all of Canal's * * * rights in and under all other outstanding contracts, commitments, purchase orders and sales orders entered into or incurred by Canal * * * in the ordinary course of operating the Stockyards Business.

On appeal from summary judgment, the reviewing court must determine whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). "[T]he reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). Whether a contract is ambiguous, meaning susceptible of more than one construction, is a question of law. *In re Hennepin County 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 498 (Minn.1995). The construction and effect of an unambiguous contract presents a question of law. *Trondson v. Janikula*, 458 N.W.2d 679, 681 (Minn.1990).

From a review of the purchase agreement, we conclude that the contract is not ambiguous and that UMS acquired the right to the yardage fees under the 1936 Agreement. Canal seeks to introduce evidence in the form of deposition testimony that the parties did not intend to transfer the right to collect fees under the 1936 Agreement. But in order to consider the intent of the parties, the contract must first be considered ambiguous. *Collins Truck Lines, Inc. v. Metropolitan Waste Control Comm'n*, 274

N.W.2d 123, 127 (Minn.1979). The trial court did not err in dismissing Canal's counterclaim.

## DECISION

Under the facts of this case, the licensor is estopped from terminating the license when the licensee made expenditures of capital and labor in reasonable reliance on the licensor's representations as to the unlimited duration of the license. Pine Valley's breach of contract claim was properly submitted to the jury. The trial court's jury instructions on irrevocable license were not an abuse of discretion. The compensatory damage award is supported by the evidence, but the punitive damage award is reversed because the tort claims should have been dismissed. The trial court's award of prejudgment interest is reversed. The trial court did not abuse its discretion in granting Pine Valley's motion for specific performance and injunctive relief. Canal's counterclaim was properly dismissed. We remand for the entry of judgment consistent with this opinion.

**Affirmed in part, reversed in part, remanded.**