# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-1892

_____

| | | |
|---|---|---|
| Canal Capital Corporation, a Delaware Corporation, | * * * | |
| Plaintiff - Appellant, | * * | |
| | * | Appeal from the United States |
| v. | * * | District Court for the District of Minnesota. |
| Valley Pride Pack, Inc., also known as Pine Valley II, Inc., a Wisconsin Corporation, | * * * * | |
| Defendant - Appellee. | * | |

_____

Submitted: December 18, 1998
Filed: February 22, 1999

_____

Before MURPHY, JOHN R. GIBSON, and MAGILL, Circuit Judges.

_____

MURPHY, Circuit Judge.

This appeal turns on whether Canal Capital Corporation (Canal) is barred by a prior state court action from now seeking to recover unpaid livestock fees from Valley Pride Pack, Inc. (Valley Pride) (formerly known as Pine Valley Meats, Inc. and also known as Pine Valley II, Inc.). The district court dismissed Canal's federal complaint, and Canal appeals. We reverse.

## I.

Canal's claim for livestock or yardage fees is based on a 1936 agreement between St. Paul Union Stockyards Company, Canal's predecessor, and Morris Rifkin, Valley Pride's predecessor. Morris Rifkin operated a meat packing plant adjacent to the Union Stockyards. In the agreement Rifkin promised to pay livestock fees, to abide by the stockyard rules, to maintain its property, and not to sue Union Stockyards under certain circumstances. Union Stockyards in turn promised to allow Rifkin water and sewer access and to provide and maintain a cattle walkway from the stockyards to Rifkin's plant.

Canal claims that the agreement requires fees for three types of cattle delivery to the packing plant: for animals purchased at the stockyards and then delivered to the plant; for animals purchased elsewhere but first delivered to the stockyards and then moved to the plant; and for animals that never pass through the stockyards, such as cattle trucked directly to the plant. Canal's federal claim seeks fees for the third type of delivery; it describes them as "direct" fees. Morris Rifkin's son, who later became the owner of the plant, testified that Rifkin paid such fees when animals were delivered directly to the packing plant. Valley Pride maintains that the 1936 agreement does not require it to pay such fees because of the way it purchases livestock.

Valley Pride purchased Rifkin's plant in 1986 at a time when the plant was not operating. It resumed operations in 1987, and in 1988 Canal asked Valley Pride to pay direct fees owing for the period from the reopening. Valley Pride did not respond to the request, and Canal took no further action. Canal sold the stockyards in 1989 to United Market Services Company (UMS), but retained ownership of some real estate surrounding the stockyards, including property upon which the cattle walkway was located. As part of the sale, Canal assigned to UMS its rights in outstanding contracts related to the stockyards.

In March 1995, Canal removed the cattle walkway from the property it retained adjacent to the stockyards, and two months later Valley Pride sued in state court to regain use of the walkway and to obtain damages for the period during which its plant was closed because of the removal.[1] Canal counterclaimed in three counts — for interference with prospective business relations, for "an accounting and determination of the fees owed to it" under the 1936 agreement, and for a determination that it had properly revoked Valley Pride's license to use the walkway. Valley Pride successfully moved to dismiss Canal's counterclaims. The trial court dismissed the first count as being without merit and ruled that the third count was properly an affirmative defense. Although Canal argued that it had not intended the 1989 assignments to UMS to include its rights to livestock fees under the 1936 agreement, the trial court accepted Valley Pride's argument that Canal had assigned its rights to the fees to UMS and dismissed without prejudice the claim for an accounting of fees because of lack of standing.

Valley Pride claimed in the state case that the 1936 agreement had created a contractual obligation to maintain the cattle walkway and that Canal's action in removing it had breached the contract. Valley Pride also sued on a number of other theories, including promissory estoppel, interference with prospective business relations, and trespass. One of Canal's defenses to the breach of contract claim was that the 1936 agreement had merely given the packing plant a license to use the walkway, rather than imposing a continuing contractual obligation upon the owner of the stockyards to maintain it.[2] Canal raised twelve affirmative defenses to Valley

---

[1]A portion of the walkway was on property owned by the South St. Paul Housing and Redevelopment Authority (HRA), and Valley Pride joined the HRA in the state action as a necessary party. The plant was shut down for over three months before the cattle walkway could be rebuilt and the plant could reopen as a result of a preliminary injunction.

[2]The court ruled before trial that the 1936 agreement had created a license, but that a question remained as to whether it had also created a contractual obligation not

Pride's complaint. One of these defenses was alleged in this way: "Canal has not received payments as required by [the 1936 agreement]." Among the other eleven affirmative defenses were claims that the statute of frauds was a bar, that Valley Pride had not obtained from Rifkin the walkway rights it asserted, that under the 1936 agreement trucking livestock the short distance from the stockyards to the plant was a reasonable alternative to the walkway, that an agreement with the HRA gave Canal a legal privilege to close the walkway, and that the walkway license was unenforceable because HRA's master plan had effectively condemned the walkway.

The state case proceeded to trial in May 1996. Although Canal's counterclaim for an accounting of the amount of livestock fees it was owed had been dismissed, Canal introduced evidence about livestock fees in defending against the breach of contract claim. At the close of Valley Pride's case, Canal moved for a directed verdict on all of Valley Pride's claims. The trial court denied the motion. In reference to the contract claim, it said that lack of consideration had been "raised as an issue of ongoing performance" but there was evidence that one of Valley Pride's suppliers had paid some livestock fees.[3] That evidence about the supplier related to fees for cattle delivery via the stockyards. There was no evidence of any payment of "direct" fees, and the court never addressed the issue of whether Valley Pride owed direct fees.

Instructions were given to the jury on Valley Pride's claims for breach of contract, promissory estoppel, interference with prospective business relations, and trespass. The court instructed that a breach could be justified ("failure without legal justification to perform all or any substantial part of what is promised in a contract is a breach of that contract") and that a breach could be waived ("[a] party's continued recognition of a contract as binding after the other party's alleged breach

to terminate the license before the purpose of the agreement was fulfilled.

[3]The court also mentioned there was a possible waiver issue.

may act as a waiver of that breach"). The only reference to affirmative defenses was that "[a]n affirmative defense must be proved in the same way that a claim must be proved." No affirmative defenses were identified, and no instruction was given regarding any particular affirmative defense, including the one related to livestock fees, or on any need to consider such defenses in connection with Valley Pride's breach of contract claim. The damage instructions addressed only damage to Valley Pride; no potential offsets for livestock fees were mentioned.

The state case was submitted to the jury with special verdict forms. The forms contained two questions relating to Valley Pride's breach of contract claim; six questions relating to the promissory estoppel, interference with prospective business relations, and trespass claims; one question relating to compensatory damages; and two questions relating to punitive damages. The questions relating to breach of contract were as follows:

> Question 1: Has [Valley Pride] proved that a contract remained in effect between it and Canal Capital Corporation on March 22, 1995?

> Question 2: If your answer to question number 1 was "Yes" then answer this question: Did Canal Capital Corporation breach the contract with [Valley Pride] by removing the Cattle Walkway?

The jury answered "Yes" to both of these questions. It also answered all six questions relating to the promissory estoppel, interference with prospective business relations, and trespass claims in favor of Valley Pride. It awarded Valley Pride $350,000 in compensatory damages and $50,000 in punitive damages. There were no special verdict questions about any type of livestock fees or any other affirmative defense.

Canal filed a post trial motion for judgment notwithstanding the verdict or for a new trial. It raised many arguments in its thirty-three page supporting brief. Those

relating to the breach of contract claim were that the 1936 agreement had only created a license, that Canal had given timely notice of its intent to remove the walkway, that there had been a "basic and fundamental change in the terms and surrounding conditions of the 1936 Agreement," and that "the ongoing consideration required in the 1936 Agreement was simply not being made." Canal also presented arguments regarding the claims for promissory estoppel, trespass, and interference with prospective business; damages; and alleged trial errors. Only one paragraph of Canal's thirty-three page brief argued its affirmative defense regarding unpaid consideration.

In denying the post trial motion, the trial court's written order addressed a number of Canal's arguments for a new trial, but made only a general statement explaining its position on the request for judgment notwithstanding the verdict on Valley Pride's liability claims:

> Competent evidence was presented by Plaintiff which could reasonably support the verdict in Plaintiff's favor. Defendants fail to recite any specific material fact dispute where the jury's findings were overwhelmingly against the weight of the evidence. Thus, Defendants are not entitled to JNOV, and that motion is denied.

The court did not discuss any of Canal's specific arguments about its entitlement to judgment on Valley Pride's claims or mention anything about the affirmative defense in respect to fees. The order was entered in September 1996 and contained a permanent injunction requiring Canal to maintain the cattle walkway.

Canal appealed the judgment and the dismissal of its counterclaim for livestock fees. The Minnesota Court of Appeals affirmed most of the findings on liability and most of the relief granted, as well as the dismissal of Canal's counterclaim for lack of standing, but reversed the punitive damages. Pine Valley Meats, Inc. v. Canal Capital Corp., 566 N.W.2d 357, 361–66 (Minn. Ct. App. 1997). There was no

discussion on the merits of the livestock fee counterclaim or the affirmative defense relating to fees.  The Minnesota Supreme Court denied further review.  Pine Valley Meats, Inc. v. Canal Capital Corp., No. C5-96-2051, slip op. at 1 (Minn. Sept. 18, 1997).

Meanwhile, Canal had reacquired the right to livestock fees under the 1936 agreement by entering into an assignment contract with UMS in July 1996.  In order to protect itself from the running of the limitations period, Canal had sued in federal court in October 1996 to recover what it estimated to be in excess of one million dollars in livestock fees owed by Valley Pride.  Since the state appeal was still pending, the parties stipulated to a dismissal without prejudice of the federal case and the tolling of the statute.  Canal recommenced its suit in federal court in September 1997 after the appeal had been decided.  Valley Pride moved to dismiss or for summary judgment on the basis of the Rooker-Feldman doctrine and issue preclusion. The district court ruled from the bench to grant summary judgment to Valley Pride, and Canal's appeal is now before us.

II.

A.

The Rooker-Feldman doctrine is named after two Supreme Court cases — Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).  Rooker held that federal district courts have no appellate jurisdiction over state courts — the United States Supreme Court is the only federal court with such power.  263 U.S. at 416.  The Supreme Court went on to explain in Feldman that federal district courts may not exercise jurisdiction over issues that are "inextricably intertwined" with a prior state court judgment.  460 U.S. at 482 n.16, 486.  A federal claim is inextricably intertwined with a state court judgment when "the relief requested in the federal action would effectively reverse

the state court decision or void its ruling." Bechtold v. City of Rosemount, 104 F.3d 1062, 1065 (8th Cir. 1997); see Keene Corp. v. Cass, 908 F.2d 293, 296–97 (8th Cir. 1990).

Valley Pride argues that because Canal used unpaid livestock fees as an affirmative defense in state court and evidence was presented about them, Canal's claim in federal court is inextricably intertwined with the state court judgment and is barred under the Rooker-Feldman doctrine. Canal argues that the doctrine does not apply because the state court action did not decide what amount of direct fees, if any, was owed to it by Valley Pride. Although Canal attempted to have that question decided in the state case by its counterclaim for an accounting, the state court dismissed the counterclaim for lack of standing on Valley Pride's motion. Canal therefore did not have an opportunity in the state action to seek the livestock fees to which it claims it is entitled.

The question before us is whether Canal's federal claim to recover unpaid livestock fees was "inextricably intertwined" with the state court judgment. Feldman, 460 U.S. at 482 n.16, 486. That is, whether Canal's claim for an accounting or payment of direct livestock fees "would effectively reverse" the state judgment. Bechtold, 104 F.3d at 1065. In order to determine this we must examine "exactly what the state court held and whether [an award of livestock fees to Canal] requires determining the state court's decision is wrong or would void its ruling." Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995); see Snider v. City of Excelsior Springs, 154 F.3d 809, 811 (8th Cir. 1998).

We have carefully reviewed the state court proceedings and the manner in which the state case was submitted and decided. Canal's counterclaim for an accounting of fees was dismissed at the outset for lack of standing, over its objection and on motion of Valley Pride. The state court did not give any instructions about livestock fees or ask the jury any questions about them. The damage instructions

were entirely focused on the compensation sought by Valley Pride and contained no mention of any potential offset. In ruling on Canal's extensive post trial motion, the court merely stated that judgment notwithstanding the verdict was denied because "the jury's verdict and award of damages are reasonably supported by the evidence." It made no comment on the fee argument advanced by Canal. The record does not show that either the court or jury ever made findings of any type about livestock fees and neither had occasion to calculate any fees that might have been owing.

The jury returned a verdict in favor of Valley Pride on its contract claim, but we do not know what subsidiary findings it made. Given the way the case was submitted, it cannot be known what the jury may or may not have decided about livestock fees, but it is known that Canal's counterclaim was eliminated for lack of standing.

The issue of nonpayment of fees as a breach defense is not identical to the issue of whether Valley Pride owed any type of livestock fees and in what amount. The latter question was the subject of the dismissed counterclaim, and it was not submitted to the jury or decided in the state action. Once Valley Pride moved to dismiss the counterclaim for lack of standing and the court granted the motion, Canal's attempt to obtain compensation from Valley Pride for unpaid fees was not in the case. If the court had ruled differently, or the parties had taken action to obtain reassignment of the rights or to join UMS, all the issues could have been determined in the state case. As it was, the state court did not have occasion to determine whether Canal could recover fees if it once again obtained standing, and neither the jury in its verdict nor the trial court in its rulings ever announced any finding that Valley Pride was not liable for direct livestock fees.

This situation is different from cases in which the <u>Rooker</u>-<u>Feldman</u> doctrine has barred federal jurisdiction. When the goal of the federal action is to nullify a state judgment, it is barred. <u>See, e.g.</u>, <u>Rooker</u>, 263 U.S. at 414 (barring "a bill in equity to

have a judgment of a circuit court in Indiana . . . declared null and void"); <u>In re Goetzman</u>, 91 F.3d 1173, 1177 (8th Cir. 1996) (federal judgment could not be sought to "change the state court result"). Similarly, a federal action cannot properly proceed against judicial officers overseeing a state case where the aim is to obtain a different result in federal court. <u>See, e.g.</u>, <u>Feldman</u>, 460 U.S. at 468 n.2 (no subject matter jurisdiction over claims seeking review of decisions of the "District of Columbia Court of Appeals, the Chief Judge of the District of Columbia Court of Appeals in his official capacity, the Committee on Admissions, and the Chairman and Secretary of that Committee"); <u>LaNave v. Minnesota Supreme Court</u>, 915 F.2d 386, 387–88 (8th Cir. 1990) (no subject matter jurisdiction over claim that the Minnesota Supreme Court, the Minnesota Board of Law Examiners, and the members in their official capacities violated plaintiff's constitutional rights). Likewise, a federal court may not assume jurisdiction over an action pleaded under 42 U.S.C. § 1983 which actually seeks to raise a claim already decided in state court. <u>See, e.g.</u>, <u>Bechtold</u>, 104 F.3d at 1066 n.3 ("substance of Bechtold's due process claims" already decided by state court); <u>Schutterle v. United States</u>, 74 F.3d 846, 847 (8th Cir. 1996) (losing party in state court could not proceed with a § 1983 action). In all six of these cases the federal action was an attempt to obtain a different result on a claim actually decided in state court. The situation before this court is more analogous to <u>Charchenko</u>, 47 F.3d at 982–83 (although issue had been presented to state court, state court did not decide it so federal jurisdiction was proper).

Here the state judgment is not under attack or in danger of nullification. Valley Pride's judgment contained an injunction to keep the cattle walkway open and damages for its prior closure. That state judgment will not be affected by the federal action, which would result at most in a determination that some amount of unpaid livestock fees must be paid by Valley Pride. Any determination in federal court that Valley Pride owes direct livestock fees would not mean the state court's decision was "wrong," nor would it "void its ruling." It would not undermine the state injunction or the damages Valley Pride was previously awarded from Canal for the period when

the plant could not operate. Canal's federal livestock fee claim is thus not inextricably intertwined with the state court decision, and the Rooker-Feldman doctrine does not prevent the district court from assuming jurisdiction over Canal's claim.

B.

In a diversity case, a federal court is required by 28 U.S.C. § 1738 to apply state law to questions of issue preclusion. See Bechtold, 104 F.3d at 1066. Minnesota requires preclusion if all four of the following elements are present:

> "(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue."

Id. at 1066–67 (quoting Willems v. Commissioner of Pub. Safety, 333 N.W.2d 619, 621 (Minn. 1983) (quotations omitted)).

In the prior action the issue to be precluded must have been "necessary and essential to the resulting judgment." Hauser v. Mealey, 263 N.W.2d 803, 808 (Minn. 1978). Issue preclusion in Minnesota "must rest upon a more solid basis than mere speculation as to what was actually adjudicated in the prior action." Parker v. MVBA Harvestore Sys., 491 N.W.2d 904, 906 (Minn. Ct. App. 1992). Canal's counterclaim for an accounting was dismissed for lack of standing so it was never considered by either the jury or the judge in the state case.[4] It would be mere speculation to

---

[4]The cases cited by Valley Pride on issue preclusion are factually and procedurally different from this case. For example, in Wanamaker v. Albrecht, No. 95-8061, 1996 WL 582738 (10th Cir. Oct. 10, 1996), issues were precluded that

conclude that the jury or court in that case decided whether Valley Pride owed direct livestock fees, and they certainly never had occasion to consider the amount that may have been owed. Moreover, whether any failure by Valley Pride to pay livestock fees could excuse Canal from maintaining the cattle walkway is not the same issue as a determination of what amount of direct fees, if any, Valley Pride owes Canal. Since it cannot be said that the direct fee issue was ever decided on the merits in the prior state court case, the issue is not precluded.

C.

In summary, we conclude that neither the <u>Rooker</u>-<u>Feldman</u> doctrine nor issue preclusion bar the claim presented by Canal in this case. We therefore reverse and remand for further proceedings not inconsistent with this opinion.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

were equivalent to affirmative defenses in a prior case; here the dismissed counterclaim, rather than the affirmative defense, is the equivalent of the claim now brought in federal court. In <u>Donnkenny, Inc. v. Nadler</u>, 712 F. Supp. 429, 431 (S.D.N.Y. 1989), a claim was precluded that was "substantively identical" to a counterclaim that had been decided in a prior action; here the federal claim is substantively identical to a counterclaim dismissed without prejudice in the prior case.